EUGENE P. PALMER

*v.*

THE MERIDEN BRITANNIA COMPANY.

*Opinion filed December 20, 1900—Rehearing denied February 7, 1901.*

1. APPEALS AND ERRORS—*when admission of incompetent evidence will not reverse.* Where a cause is tried by the court without a jury, the admission of incompetent evidence will not be ground for reversal if there is enough competent evidence to sustain the finding.

2. SAME—*whether alleged condition precedent was waived is finally settled by the Appellate Court.* In an action at law upon an agreement contained in a lease, whether the evidence shows that an alleged condition precedent is waived is a question of fact or a mixed question of law and fact, upon which the judgment of the Appellate Court is final.

3. SAME—*party cannot complain of error in his own propositions of law.* A proposition of law requested by the defendant, to the effect that the plaintiff must prove performance by him of conditions precedent or a waiver of the same by the defendant, is an admission that such conditions might be waived, and the defendant cannot complain, on appeal, that the proposition was erroneous.

4. LEASES—*effect of acceptance of a written waiver of option to renew lease.* If a corporation lessee may exercise an option to renew a lease only in case "it shall have performed all of its covenants herein contained," the action of the lessor in signing and accepting a written waiver of such option is an admission of the lessee's right to exercise the option, and consequently that at that time it had performed all of its covenants.

5. CONTRACTS—*when conditions in contract under seal may be waived by parol.* While an executory contract under seal cannot be modified by parol so as to introduce any new element, yet conditions in a contract under seal may be waived by parol where the waiver is in the nature of a release.

6. SAME—*rule as to construing covenants in agreement.* Covenants in an agreement will be construed as conditions precedent or as independent agreements, according to the intention of the parties and the good sense of the case, and technical words must give way to such intention.

7. SAME—*effect where covenant goes to only part of consideration.* If the plaintiff's covenant goes to only a part of the consideration, and a breach thereof may be compensated in damages, the defendant cannot rely upon the covenant as a condition precedent, but must perform the covenant upon his part and rely upon his claim for damages for any breach of the plaintiff's covenant, either by way of recoupment or in a separate action.

8. INTEREST—*when interest may be allowed.* Where substantial performance authorizes a recovery, the contract price may be allowed, with interest; and a waiver by defendant is to be regarded as the equivalent of full performance by the plaintiff.

*Palmer* v. *Meriden Britannia Co.* 88 Ill. App. 485, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

This is an action of assumpsit brought, on August 21, 1895, by the appellee, the Meriden Britannia Company, against appellant, Eugene P. Palmer, and one C. Marion Hotchkin upon or under a certain lease dated April 1, 1884. The action is based upon that clause of the lease herein set forth, which provides for the payment of $5000.00 at the end of the term. The original declaration consisted of two counts. On January 19, 1898, appellee, the plaintiff below, filed two additional counts, and also the common counts for goods sold and delivered; for money lent and advanced, paid, laid out, and expended; for money had and received, and due and owing for interest and forbearance; for the value of work and materials; and also for amount due upon accounting. On March 21, 1899, plaintiff below, by leave of court, amended its declaration by filing two additional counts. The plea of general issue was filed to the original declaration and to the declaration as amended. The defendant, C. Marion Hotchkin, died during the pendency of the action before the trial, and the suit was continued against the other defendant, Eugene P. Palmer, alone. By agreement of the parties, the cause was submitted to the court for trial without a jury. The court was asked by the defendant below, the appellant here, to hold certain propositions of law in the decision of the case. Some of these propositions were marked "held" by the court, and others were marked "refused." The appellee, plaintiff below, submitted no propositions to be held by the court as law in the

decision of the case. Propositions, numbered "2" and "4," asked by the appellant were refused by the court as asked, but were modified by the court and, after being so modified, were marked "held" by the court. The issues were found by the court against the defendant below, and a motion for a new trial, made by the latter, was overruled. The court then rendered judgment in favor of the plaintiff below, the present appellee, for the full sum of $5000.00, with interest at the statutory rate from May 1, 1895, amounting at the time of the rendition of the judgment to $5990.98, to which finding and judgment of the court the defendant excepted.

An appeal was taken from the judgment so rendered to the Appellate Court. The Appellate Court has affirmed the judgment of the circuit court, and the present appeal is prosecuted from such judgment of affirmance.

By the terms of the lease, executed under seal by said Hotchkin and Palmer as parties of the first part, and the Meriden Britannia Company, a corporation of Connecticut, as party of the second part, Hotchkin and Palmer leased to said company a certain piece of ground in the city of Chicago, having a west front on State street between Monroe and Madison streets, and designated as No. 147 State street, for a term of ten years and one month, beginning on April 1, 1885, and ending on April 30, 1895. Therein, appellee, the second party, agreed with the first party to pay them as rent for the premises the sum of $833.33 per month, payable monthly during the whole of the term on the last day of each month, amounting, for the whole term, to the sum of $100,833.33; the appellee company therein agreed that it would before May 1, 1887, erect and complete on said land a good, substantial and tasteful brick store building at least five stories high, and suited to the locality, at a cost of not less than $20,000.00, to have a handsome ornamental front of stone or iron or with such material combined with brick or terra cotta, with plate glass windows in front,

as is used in first-class stores in the same vicinity. The lease contained the following provision: "Internally said building will be constructed without center columns if the omission of such columns will not entail an extra cost exceeding $1500.00, and the lofts must be of sufficient strength to carry heavy storage. The main floor will be of hard lumber laid upon pine sheeting, and the floors of the lofts will be of white pine, laid upon a sheeting of common pine. The whole of the basement will be cemented on the bottom with Portland cement; all walls and ceilings will be properly lathed and plastered or ceiled, and proper conductors from the roof will take the water therefrom to the proper sewer connection, so that no injury can occur to such building from such water." The lessee agreed to place therein a boiler and engine for heating the building and for running a passenger elevator; the lessee also agreed to keep the building, during the term, in as good condition and repair as when completed, ordinary wear and tear and natural decay alone excepted; the lessee was to make use of the party walls on the north and south sides of the ground and to pay whatever might be necessary for using the same, and, if the same should be rendered unfit for use, to replace the same, etc. The lessee also agreed, that no business should be carried on in the building except a mercantile business of the general character of that done on State street between Madison and Adams streets unless with the consent of the lessors, and that no portion of the premises should be used for gambling, or for immoral purposes, or for the sale of liquor. The lessee agreed to keep the building insured during the term to the amount of at least $15,000.00, and to cause the loss, if any, to be made payable to the lessors, and to deliver the policies for such insurance to the lessors. The lease also provided that, in case of damage or loss by fire during the term, the lessee, its successors and assigns, would erect and finish on the land a new building "on the same general

plan, of the same dimensions and in all respects as good as that damaged or destroyed, and to that end the lessee, its successors and assigns will be entitled to all the insurance moneys paid on such loss to apply on such rebuilding." The lessee also agreed to pay all taxes and assessments and water rates levied on the building and improvements to be erected during the term. The lease also provided that, if the lessee should not by May 1, 1887, have fully completed the building, then for each month after that time until said completion it should pay the monthly rent, and also a further sum monthly equal to said monthly rent for damages for the delay, until the completion of the building. It was also therein provided that, should the lessee fail to make payments for insurance or taxes or assessments or water rates, the lessors might pay the same and treat such payment as additional rent; and, should the lessee fail to pay the rent due from it to its lessors, then said lessors might at their option advance the same, and deduct the amount so advanced from the next payment of rent due on the lease. In the event that the leasehold interest should be terminated, the lessors agree to pay the lessee the full cash value of the improvements placed upon it. It was also agreed that all payments to accrue from time to time to the lessors should be a first lien upon the building.

The lease in question contains the following provision, upon which the present suit is brought, to-wit: "And at the end of the said term, if the said lessee shall have duly fulfilled all its covenants and agreements herein contained, and if the said building to be erected as aforesaid and maintained or renewed as aforesaid, shall remain on such ground in the condition above stipulated for, then the said parties of the first part will pay to the party of the second part, its successors or assigns, the sum of five thousand dollars ($5000.00) for such building, with its fixtures and appurtenances as aforesaid, on being put in possession thereof." Therein the lessee agreed to

keep the premises in a clean and wholesome condition, as provided for by the city ordinances, and to observe all ordinances respecting protection from fire. It was also provided in the lease that, at the end of the term, if the lessors should decide to re-let the said premises for another term "then the party of the second part, if it shall have performed all its covenants herein contained, shall have the preference in obtaining such new lease over all other parties if it shall pay or secure the payment of the full amount of rent which said premises will then bring." It was also provided that, if the rent should be unpaid on the day when due and for thirty days thereafter, "or if default shall be made for the period of thirty days in the performance of any of the covenants or agreements herein contained, to be kept by the party of the second part, its successors or assigns, then it shall be lawful for the parties of the first part, their representatives or assigns at their option and without notice to the party of the second part, its successors or assigns, to declare said term herein demised ended," and to re-enter and remove the lessee and re-possess the premises, and "in such event the building, with its fixtures and appurtenances to be erected on said land by the party of the second part, shall become the absolute property of the parties of the first part, without any right of the party of the second part to demand or recover from the parties of the first part any compensation whatever therefor." It was also provided that nothing therein contained should be held in any manner to preclude the lessors from declaring the lease thereby created, with or without notice to the lessee, to be at an end, if default should be made for the period of thirty days in the performance of any of its covenants and agreements by the lessee, its successors or assigns.

The appellee paid in full the $100,833.33 of rent reserved by the lease. It erected upon the leased premises a six-story building, instead of a five-story building, cost-

188—33

ing over $30,000.00, and occupied the same for ten years. The building was finished about May 1, 1885. Two elevators were put into the building. It was kept insured for $26,000.00 during the term. Some two years before the expiration of appellee's term, Hotchkin and Palmer rented the premises, including the building thereon, to Burley & Co. for five years from May 1, 1895, at a rental of $2500.00 a month, or $30,000.00 a year. When appellee's lease expired, the building remained on the premises, and Burley & Co. took possession of the same under the appellant, Palmer, by virtue of the lease so made by Hotchkin and Palmer.

When the lease made to the appellee expired, appellee demanded the $5000.00, which the appellant had agreed to pay for the building, but payment was refused, upon the alleged ground that appellee had not constructed the building in accordance with the description of it contained in the lease.

McCORDIC & SHERIFF, (E. A. HARRIMAN, of counsel,) for appellant.

WILSON, MOORE & McILVAINE, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This action is brought to recover the sum of $5000.00, which, by the terms of the lease, the lessors were to pay to the lessee at the end of the term for the building erected upon the premises, with its fixtures and appurtenances, "on being put in possession thereof." Hotchkin and Palmer were to pay said sum of $5000.00 "at the end of the said term, if the said lessee shall have duly fulfilled all its covenants and agreements herein contained, and if the said building, to be erected as aforesaid and maintained or renewed as aforesaid, shall remain on such ground in the condition above stipulated for." It is not denied by the appellant, that the appellee paid all the

rent during the term called for by the terms of the lease; nor is it denied by the appellant that, at the end of the term, the appellant was put in possession of the building, costing over $30,000.00, which appellee erected upon the premises during the term. The defense, set up by the appellant, is that the building, erected upon the premises by the appellee, was not, in certain particulars, such a building as the terms of the lease called for, and that, therefore, the appellee did not fulfill all its covenants and agreements, and that the building did not remain upon the ground at the end of the term in the condition stipulated for. The contention of the appellant is, that the agreement of the appellee to construct a building, which should be internally finished in a particular way, was a condition precedent to the right of appellee to recover the sum of $5000.00, and that, appellee, not having performed the condition precedent named in the covenant, is not entitled to be paid the sum named for the building erected by it.

The respects, in which the building is said to have fallen short of the requirements mentioned in the lease, are that, internally, the building was constructed with center columns, as supports for the ceilings, when the same could have been constructed without such columns at an extra cost not exceeding $1500.00; that the whole of the basement of the building was not cemented on the bottom with Portland cement; and that the walls of the basement and of the fourth, fifth and sixth floors were not lathed and plastered.

*First*—It is true, that the building was constructed with center columns, and the question, whether it could have been constructed without center columns at a cost not exceeding $1500.00, is a question of fact. The case was tried below before the court without a jury, and the testimony upon this question of fact is conflicting. The testimony, introduced by the appellee, tends to show that the building could not have been constructed with-

out center columns for less than an extra cost of between
$3000.00 and $4000.00, while the testimony, introduced
by the appellant, tends to show that it could have been
constructed without such columns at a cost of less than
$1500.00. The very language of the lease itself upon this
subject implies, that the cost of construction without
columns would be greater than the cost of such construc-
tion with columns. Inasmuch as there was evidence,
tending to sustain the contention of the appellee upon
this subject, and inasmuch as all the evidence introduced
on both sides was conflicting, the finding of the court
below on this question of fact will not be disturbed.

The trial court held as law in the decision of the case
the following propositions, submitted to it by the appel-
lant: "The construction of the building with center col-
umns was not a substantial performance of the contract
to construct a building without center columns, unless
the construction of the building without center columns
would have cost more than $1500.00 additional;" "The
burden of proof is on the plaintiff to show that the con-
struction of the building without center columns would
have cost more than $1500.00, in addition to the cost of
the building actually erected." The court below, after
holding these propositions to be law in the decision of
the case, could not have found the issues for the appellee
without at the same time finding from the evidence, that
the construction of the building without center columns
would have cost more than the $1500.00 named in the
lease. In other words, the trial court found that the
omission of center supporting columns would have en-
tailed an extra cost, exceeding $1500.00. The Appellate
Court has affirmed the judgment of the trial court, and
this judgment of affirmance has settled all the disputed
questions of fact in the case. (*Wrought Iron Bridge Co.* v.
*Comrs. of Highways*, 101 Ill. 518).

Upon the question, whether the third and fourth sto-
ries of the building were lathed and plastered or not,

there is also a conflict of testimony.   The evidence, introduced by the appellee, tends to show that the third and fourth stories were lathed and plastered before the expiration of the term of the lease on April 30, 1895.   The findings of the lower court are conclusive upon this question of fact.   As to the lathing and plastering of the sixth floor, which was a loft used for storage, it may be observed that the lease did not require the erection of a building six stories high, but only of a building five stories high.   As a matter of fact, appellee constructed a building one story higher than the lease required it to do. The agreement in the lease, that "all walls and ceilings will be properly lathed and plastered," refers to all walls and ceilings of a building five stories in height.   Hence, there really was no agreement on the part of appellee to lath and plaster the sixth story of any building.   As we read the evidence, however, there is testimony tending to show that the sixth floor was lathed and plastered, and, upon the question of fact whether it was so lathed and plastered or not, the judgments of the lower courts are conclusive.

It is claimed, however, by the appellant, that the court below improperly permitted the appellee to introduce hearsay evidence upon the question, whether the omission of the center supporting columns entailed an extra cost of over $1500.00.   The architect, who constructed the building for appellee, was dead at the time of the trial of the present case.   The agent of the appellee testified, that such deceased architect made an estimate of the cost of construction without columns, and that his estimate made the extra cost about $4000.00. The hearsay testimony complained of is the statement of appellee's agent as to the estimate made by the deceased architect.   It may be admitted, that this testimony was incompetent as being hearsay evidence, but there was other evidence, besides the objectionable testimony, to the effect that the extra cost would have exceeded $1500.00.

As the trial was before the court without a jury, the fact, that some incompetent testimony was admitted, is no ground of reversal, when the record shows that there was competent testimony sustaining the finding of the court. "Where a cause is tried by the court without a jury, and there is enough of unobjectionable testimony to sustain the finding of the court, it will not be disturbed notwithstanding the reception of the incompetent evidence, as the same harmful effect does not follow in such a case, as when before a jury." (*Schroeder* v. *Harvey*, 75 Ill. 638; *Partridge* v. *Ryan*, 134 id. 247).

*Second*—What has already been said disposes of the complaints made against the construction of the building, except the provisions relating to the basement. The lease provides, that "the whole of the basement will be cemented on the bottom with Portland cement; all walls and ceilings will be properly lathed and plastered or ceiled." It appears that the whole of the basement was not cemented on the bottom with Portland cement, and that the walls of the basement were not lathed and plastered. The proof does show, that a part of the basement under the rear sidewalk was constructed with a top floor of two-inch English Portland cement, and that there was constructed in the rest of the basement a concrete floor with a two-inch plank surface. The question then arises, whether the failure of the appellee to cement the whole of the basement on the bottom with Portland cement, and lath and plaster the walls of the basement, constitutes a defense to the right of the appellee to recover in this case. The proof shows that the basement was used for storage and packing purposes.

Appellant insists, that the covenant to cement the whole of the basement on the bottom with Portland cement, and to properly lath and plaster and ceil the walls and ceiling of the basement, is a condition precedent; and that, without a literal and exact performance, the appellee is not entitled to recover.

It is claimed on the part of the appellee that, if the covenants in question were conditions precedent, the performance of the same was waived by the acts and conduct of the appellant. It will be impossible within the limits of this opinion, and it is unnecessary, to examine all the evidence upon the subject of waiver. In May, 1885, and before the building was completed, appellant made some objection to the construction of the building, upon the ground that a Portland cement floor was not placed in the basement, and that the basement was not lathed and plastered. It was not until two years after this, to-wit, in May, 1887, that appellee was obliged, under the terms of the lease, to complete the building. After the complaint upon this subject made by appellant in May, 1885, he made no further objection, and entered no further protest against the failure to put in the Portland cement floor in the basement and to lath and plaster the basement. For ten years thereafter rent under the lease was regularly paid and accepted by the appellant. Although the lease provided, that it might be forfeited for a breach of any of the covenants, and double rent might be recovered for each month after May 1, 1887, until the completion of the building, no action of any kind was taken by appellant, indicating that the building was not in all respects satisfactory. On the contrary, on December 28, 1892, more than two years before the expiration of appellee's term, appellant rented the premises to Burley & Co. for five years from May 1, 1895, at an annual rental of $30,000.00. The building, as constructed by the appellee, was thus accepted by the appellant, and rented by him at a large increase of rent to Burley & Co., with the basement in the condition, in which the appellee had left it. In addition to this, appellee had an option on the premises at the end of the term for an additional term. The lease provides that appellee, "if it shall have performed all of its covenants herein contained, shall have the preference in obtaining

such new lease over all other parties." Appellant induced appellee to waive its right to exercise this option, and himself signed a written acceptance of its written waiver. This conduct of the appellant was equivalent to an admission, that appellee had a right to exercise the option in question on December 28, 1892, when the written waiver and the written acceptance thereof were signed. As appellee was only entitled to exercise such option, "if it shall have performed all of its covenants herein contained," the conduct of appellant amounted to an admission, that at that time appellee had performed all its covenants, as, contained in the lease. When appellant at the expiration of the lease took possession of the building by Burley & Co., his new tenants, he did so without complaint or protest. Whether or not all these circumstances amounted to a waiver of the alleged conditions precedent above referred to, was a question of fact, or of mixed law and fact, which is settled by the judgments of the lower courts. (*Hunter* v. *Clarke*, 184 Ill. 158; *Meyer* v. *Butterbrodt*, 146 id. 131; *Phenix Ins. Co.* v. *Belt Railway Co.* 182 id. 33; *Alschuler* v. *Schiff*, 164 id. 298). It is well settled by the foregoing authorities, and by other decisions made by this court, that the finding of the Appellate Court as to mixed questions of law and fact is final, and not subject to the review of this court. The facts, alleged to constitute waiver, were set up in appellee's declaration, and the evidence in regard to waiver was admitted without objection on the part of the appellant. The appellant asked the court to hold, as law in the decision of the case, and the court did so hold, certain propositions to the effect that the plaintiff could not recover without performance of the conditions precedent on its part, or without a waiver of such performance on the part of the appellant himself. In other words, the propositions, submitted by the appellant and held for the appellant, announce the doctrine that the performance of the conditions precedent here insisted upon can be waived. It

is well settled, that a party cannot complain of errors in propositions of law held at his own request. (*Borden* v. *Croak*, 131 Ill. 68; *Cassem* v. *Ernst*, 183 id. 137).

It is insisted however, on the part of the appellant, that conditions in a contract under seal cannot be waived by parol. No proposition, embodying this principle of law, was tendered to the trial court by the appellant. It is true, that an executory contract under seal cannot be modified by parol, so as to introduce any new element into the contract, but conditions in a contract under seal can be waived by parol, where the waiver is in the nature of a release or discharge. (*Starin* v. *Kraft*, 174 Ill. 120; *Moses* v. *Loomis*, 156 id. 392). In *Moses* v. *Loomis*, *supra*, where the question arose as to whether a condition in a lease under seal could be released or waived by parol, we said: "Rights arising under sealed instruments may be waived by parol. Thus, where a lease contains a condition of forfeiture in case the tenant underlets the premises without the written consent of the lessor, if, after such condition is broken, the lessor does any act which is clearly inconsistent with his reliance upon it, such as the acceptance of rent with full knowledge of all the facts, such conduct amounts to a waiver of the condition, so as to preclude the lessor from afterward availing himself of the forfeiture."

*Third*—In construing covenants in an agreement, such covenants will be regarded as conditions precedent, or as independent agreements, according to the intention of the parties and the good sense of the case, and technical words give way to such intention. (*Davis* v. *Wiley*, 3 Scam. 234; Leake on Contracts, 567). A fair construction of the lease in question leads to the conclusion, that it could never have been the intention of these parties to permit the lessors to receive over $100,000.00 in rent during a period of more than ten years, and to receive and take possession of a building costing over $30,000.00, and then to defeat an action for $5000.00, the agreed price

of such building, merely because appellee had broken a covenant to cement the floor of the basement with Portland cement, and to lath and plaster the walls and ceiling of the basement. Such a construction would not be within "the good sense of the case."

It is further to be observed that, if the appellee has broken its covenant in this case, it has broken its covenant as to a part of the consideration only. The consideration, moving from the lessors in the execution of the lease, is the lease of the State street lot for ten years and the promise to pay $5000.00 for the building to be erected by the lessee. The consideration, moving from the lessee, is its covenant to pay $100,000.00 in rent during the term, and its other covenants to erect a building, to keep it insured, to pay taxes, to renew the building in case of fire, etc., and to surrender the building in good repair at the end of the lease. It is admitted, that the appellee has performed the substantial part of its covenants. The appellant refuses to pay the $5000.00 upon the alleged ground that performance by the lessee of the terms of its covenants is a condition precedent to its right to recover from him. Where the plaintiff's covenant goes to only a part of the consideration, and a breach of the covenants can be compensated in damages, the defendant cannot rely upon the covenant as a condition precedent, but must perform the covenant on his part, and then rely upon his claim for damages for any breach of the covenant by the other party, either by way of recoupment, or in a separate action.

In *Nelson* v. *Oren*, 41 Ill. 18, we said (p. 23): "Where a covenant goes only to part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and an action may be maintained for a breach of the covenant on the part of the defendant without averring performance in the declaration." (*White* v. *Gillman*, 43 Ill. 502; *Newson* v. *Smythies*, 3 Hurl. & Norm. 840). Where there are a number

of covenants on each side, the enjoyment by one party of a substantial performance by the other has been held by the courts to prevent his insisting upon the non-performance of that which was originally a condition precedent. (*Pust* v. *Dowie*, 32 L. J. Q. B. 179). In *Pust* v. *Dowie*, *supra*, it was said: "If, indeed, he has received the whole or any substantial part of the consideration for the promise on his part, the warranty loses the character of a condition, or, to speak more properly, perhaps, ceases to be available as a condition, and becomes a warranty in the narrower sense of the word, namely, a stipulation by way of agreement, for the breach of which a compensation must be sought in damages." (*Carter* v. *Scargill*, 10 L. R. Q. B. 564; Benjamin on Sales, (Bennett), 515, sec. 564). In Benjamin on Sales, *supra*, the reason of this rule is given as follows: "It would be unjust under such circumstances that a party, who has received a part of the consideration for which he bargained, should keep it, and pay nothing because he did not receive the whole. The law, therefore, obliges him to perform his part of the agreement, and leaves him to his action for damages against the other side for the imperfect performance of the condition." (2 Chitty on Contracts, 1084; Beach on the Modern Law of Contracts, 134, sec. 107; *Wiley* v. *Inhabitants of Athol*, 150 Mass. 426; *Lowber* v. *Bangs*, 2 Wall. 728). In *Wiley* v. *Inhabitants of Athol*, *supra*, it was said: "Although conditions precedent must be performed, and a partial performance is not sufficient, yet when a contract has been performed in a substantial part, and the other party has voluntarily accepted and received the benefit of the part performance, knowing that the contract was not being fully performed, the latter may thereby be precluded from relying upon the performance of the residue as a condition precedent to his liability to pay for what he has received, and may be compelled to rely upon his claim for damages in respect of the defective performance."

In applying this doctrine to the case at bar, it will be seen that the appellant charges the appellee with the breach of a condition precedent in failing to construct the building in certain specific particulars, as required by the lease. Appellee's covenant to so construct the building was but a small part of the total consideration for the promise to pay the $5000.00. Appellee performed the substantial part of its contract by erecting a building, costing more than $20,000.00, and paid $100,000.00 of rents, and paid all taxes required by the lease, and performed the various other covenants. Appellant accepted the rents and the building, and had the benefit of appellee's part performance. Appellant is thereby precluded from relying upon the non-performance of the residue of appellee's covenants, as a condition precedent to his liability. In the few particulars, in which appellee has fallen short of a full performance, compensation could have been made in damages. Such damages would have been the cost of a Portland cement floor in the basement, and the cost of lathing and plastering the walls thereof. But appellant introduced no evidence to show what damages, if any, he suffered by reason of the alleged failure to comply with these conditions of the lease. In the absence of such evidence, the trial court could make no allowance for such damages, and did not err in not making such allowance.

Something has been said in the arguments of counsel in regard to building contracts, where the principle of substantial, and not exact performance, is applicable. If the lease in question should be considered from this standpoint, it certainly cannot be contended that the building, erected by appellee, was not a good and substantial building of the general plan described in the lease. In contracts called "building contracts," a literal compliance with the specifications is not necessary to a recovery by the contractor. A substantial performance in good faith is sufficient. He will not be held to have

forfeited his right to compensation by reason of mere technical, inadvertent or unimportant omissions or defects. Slight defects, caused by inadvertence or unintentional omissions, are not necessarily in the way of the recovery of the contract price, less the amount by way of damages requisite to indemnify the owner for the expense of conforming the work to that for which he contracted. (*Keeler* v. *Herr*, 157 Ill. 57; *Leeds* v. *Little*, 42 Minn. 414).

*Fourth*—It is claimed that the court below erred in allowing interest. The present suit was on the contract, and, in addition to this, the declaration contains the common counts. Where the covenants of the lease are construed to be independent covenants, and not conditions precedent, a recovery may be had on the contract, even without alleging performance of the other conditions. (*Davis* v. *Wiley*, 3 Scam. 234; *Prairie Farmer Co.* v. *Taylor*, 69 Ill. 440). Where substantial performance justifies a recovery, the contract price may be recovered with interest; and a waiver is regarded as the equivalent of full performance. That interest may be recovered in such cases is held in the case of *Keeler* v. *Herr*, *supra*. There was, therefore, no error in the allowance of interest.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*