## Martin J. Peterson, Executor, v. The Manhattan Life Insurance Company.

### Gen. No. 4,384.

1. WARRANTY—*when breach of, precludes recovery upon insurance policy.*  Where an applicant for insurance replies "No" to a question as follows: "Have you ever been declined or postponed by any company,"— and it appears that he had been rejected by a fraternal benefit society, a recovery cannot be had upon a policy so issued, and with respect to such recovery it is immaterial whether such answer be taken as a warranty or as a representation.

2. INCOMPETENT TESTIMONY—*when admission of, will not reverse.*  Where a case is tried by a court without a jury, the admission of incompetent evidence will not require a reversal where there is sufficient competent evidence to sustain the judgment.

Action of assumpsit.  Error to the Circuit Court of Henry County; the Hon. WILLIAM H. GEST, Judge, presiding.  Heard in this court at the April term, 1904.  Affirmed.  Opinion filed August 24, 1904.

W. F. ANDERSON, for plaintiff in error.

PECKHAM, SMITH, PACKARD & APMADOC, for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

Martin J. Peterson, executor of the will of Charles H. Peterson, deceased, brought this action against the Manhattan Life Insurance Company to recover the sum of $10,000 pursuant to a policy upon the life of said deceased issued by said defendant.  To an appropriate declaration defendant pleaded the general issue, with an amended notice thereunder of special matters intended to be relied upon in defense.  These defenses were based upon the answers by deceased to questions 24, 68, 83 and 86 in his application for the policy.  The cause was tried without a jury, and there was a finding for defendant, and a judgment against plaintiff for costs, to be paid in due course of administration.  Plaintiff has sued out this writ of error to bring said judgment before this court for review.

The policy began: "In consideration of the application

for this policy and the statements and covenants therein contained, which are a part of this contract," and after reciting as a further consideration the payment of certain premiums, and that for said considerations the company would pay to the estate of Charles H. Peterson, $10,000, upon satisfactory proof of his death, it continued as follows: " Upon the following conditions: If any statement made in the application be in any respect untrue, * * * this policy shall be void, and all payments made upon it shall be forfeited to the company; except that, after being in force three full years, this policy shall be incontestible for any misstatement in the application," etc. The application, after all the questions and answers, contained the following above the signature of deceased: " It is hereby warranted that the above statements and answers are full, complete and true in every particular, and they are offered as a consideration for the insurance applied for, which, however, shall not be forfeited by any misstatements made herein after three years from the date hereof." The application was dated August 9, and the policy August 21, 1895. Charles H. Peterson died of acute tuberculosis on or about March 6, 1897, within said three years.

Question 68 in the application was as follows: " Have you ever been declined or postponed by any company ? " Peterson answered this question "No." Defendant's proofs showed that under date of March 10, 1895, Peterson applied to the Modern Woodmen of America for membership in Cambridge Camp of said order and for indemnity in case of his death in the sum of $3,000; that he was examined by Dr. Kirkland for said society on March 12; that the application reached the head physician of the order on March 15; that it was rejected; that on March 18 an officer of the order returned to Peterson the money he had paid as initiation fees, except $1 for the examination fee, and informed Peterson he had been rejected by the head physician. Peterson received this information four months and twenty-one days before he made the application to defendant, in which he stated that he had not been declined

or postponed by any company. Proposition No. 11 held by the court at the request of defendant shows the judgment of the court was based on this answer. That proposition was to the effect that, as applied to the present case, the Modern Woodmen of America is a life insurance company, and that plaintiff could not recover if Peterson in his application to defendant for this insurance made an untrue answer to said question 68, as said answer was a warranty and material to the risk sought. Plaintiff claims that this proposition was erroneous, and that the facts above stated relative to the answer to question 68 do not constitute a defense to this action. Plaintiff argues said answer was not a warranty. We are of opinion he cannot take this position upon this record. By the propositions he requested, the court held that the answers to questions 24 and 86 were warranties of the truth of the answers as interpreted by the court; and that the answer to question 83 warranted the truth of so much of the answer as was specific. By his proposition No. 5 he also asked the court to hold that the answer to question 24 was a warranty of the truth of the answer, in the sense the court was therein asked to interpret the meaning of said answer. The seventh proposition, which the plaintiff requested, but the court refused, began as follows: " The court holds the law to be that by the question and answer numbered 68 in the application, Charles H. Peterson, deceased, warranted the fact to be true that said Peterson had never been declined or postponed by any company," etc. The eighth proposition, which plaintiff requested, but the court refused, began as follows: " The court holds the law to be that by the question and answer mentioned, marked 68, Charles Peterson, deceased, warranted that he had never been declined or postponed by any company engaged in life insurance," etc. By these propositions the plaintiff asked the court to hold that the answer to this question was a warranty. Although he put such qualifications upon the meaning of said question and answer in the other parts of these propositions that the court refused them, yet, having taken

that position before the court and aided in inducing the court to hold said answer was a warranty, he cannot now be heard to argue it was not a warranty. If the court was wrong in holding it a warranty, plaintiff asked the court so to hold and assisted in inducing the court to reach that conclusion.

Plaintiff in error argues that the Modern Woodmen of America is not a life insurance company. Its fundamental laws were in evidence, showing it to be a fraternal beneficiary society. It was held the undertaking evidenced by the certificate of a similar society is one of insurance, in Rockhold v. Canton Masonic Benevolent Society, 129 Ill. 440. In Railway Conductors' Benefit Association v. Robinson, 147 Ill. 138, the court, speaking of a society like the Modern Woodmen, said (on page 152): "There can be no doubt, we think, that the benefits provided for by the constitution and by-laws of the association are in the nature of life insurance, and that the contract between the association and the member, evidenced by the constitution, by-laws and membership certificate, is, in substance, a policy of insurance upon the life of the member." After discussing the certificate further, the court said: "This is clearly, in substance and effect, a contract of insurance, and an association organized for the purpose of entering into and performing contracts of that character is in reality an insurance company." Such was the holding in Lehman v. Clark, 174 Ill. 279, and such is the general language of the text books. By the eighth proposition, from which a quotation is above made, plaintiff took the position, from which he cannot now recede, that the answer to said question 68 was a warranty by Peterson that he had never been declined by any company engaged in life insurance. That answer was untrue. Even if it were not a warranty but merely a representation, it was material, and if it had been answered truly would probably have led to such an investigation as would have caused defendant to reject this application. But it is said the language of question 68 was uncertain, and that deceased might have supposed it referred to regular old line

insurance companies and not to a beneficiary society like the Modern Woodmen. We must credit Peterson with intelligence enough to know that this and other questions were put to him with a view to informing defendant of all facts concerning him which would aid it in deciding whether it was advisable for it to insure his life. Less than five months before, a similar set of questions had been propounded to him for the same purpose, and answered by him, and he had been rejected. So soon afterwards he is again applying for insurance. Then he asked for $3,000; now he asks $10,000. He could hardly have failed to consider why he was rejected before. The answers to defendant avoid the statements which caused him to be rejected before. In his family history in his application to the Modern Woodmen he not only stated as here that one brother had died, with tuberculosis as a factor in his death, but he also stated: " Two brothers are seeking other climates for their health, and are tuberculous." It was that family history which caused his rejection. In his family history in the present application, less than five months later, he gives the health of these brothers as " good," with no allusion to the fact that they had that spring been to Arizona and Southern California, and one of them, at least, because Dr. Kirkland decided he had tuberculosis, and directed him to go. When the feeble denials by these brothers are considered, including their testimony that they did not know why they went to Arizona and southern California, and the statement of one that as soon as he got to Arizona he caused himself to be thoroughly examined by a physician but he did not know why, and are contrasted with the positive testimony of Dr. Kirkland that he found said brother had tuberculosis and sent him to a milder climate, and with the statement by deceased to the Modern Woodmen, it cannot be believed that his previous rejection was not in his mind. So, too, he told the Modern Woodmen that he had had an attack of rheumatism which lasted thirty days, but it was muscular and not inflammatory; while defendant having asked him, by question 24: " Have you ever had rheumatism in any form? Number of attacks, dates, duration, parts

affected? State also whether there were heart complications;" he answered "No." By question 81 he was asked when he last consulted a physician and for what reason, and answered "July, 1895, malaria;" and in answer to question 82 gave the name of the physician as W. S. Bryan. Dr. Bryan was the physician who conducted that examination. By question 83 defendant asked him : "Give names and addresses of the physicians who have attended you or whom you have consulted during the last ten years, and for what diseases." He gave the evasive answer, "Have not been sick." In fact he had consulted Dr. Kirkland for rheumatism in June, 1894, three or four times, and had received two prescriptions from him; but if he had named Dr. Kirkland, that might have led to a disclosure of the tuberculous condition of his two brothers, and of his rejection by the Modern Woodmen. These various circumstances strongly suggest that he had in mind his former rejection, and sought to avoid the grounds thereof in this application.

As already stated plaintiff obtained a proposition of law from the court to the effect that the answer to question 24 was a warranty. We think the explanation of the answer that doctors are not inclined to call muscular rheumatism by the name "rheumatism," is insufficient, where, as here, the question asked was whether the applicant had ever had rheumatism "*in any form.*" Peterson had had rheumatism, and the answer was untrue, and was the opposite of what he stated to the Modern Woodmen.

We consider it unnecessary to pass upon the cross-errors assigned in detail, as we are of opinion the court correctly decided the case against plaintiff. Plaintiff complains of one or two rulings upon the evidence. It is unnecessary to discuss these objections as the competent evidence warrants the judgment for plaintiff, and in such case, where the cause is tried without a jury, the admission of incompetent testimony will not require a reversal, as the same harmful effect does not follow as where the incompetent evidence is submitted to a jury. Palmer v. Meriden Britannia Co., 188 Ill. 508.

Plaintiff proved in rebuttal that after this policy had been forwarded from New York to Satterly, its agent in Chicago, its second vice-president wired Satterly to hold the policy, and wrote him in explanation : " We are now informed he is not in the furniture business, as he has sold; we are also informed that it is thought that he now has some lung trouble. As this party was examined by a strange examiner, who is also his family physician, we are not willing that this policy should be delivered until we have further information regarding the risk." Afterwards Satterly came to Cambridge, and investigated the standing of Dr. Bryan and his general reputation, and then delivered the policy to Peterson, saying as he did so that he had found everything all right and was thoroughly satisfied. It is not shown that Satterly ascertained Peterson had been rejected that very spring, or that two living brothers had gone to a warmer climate because of tuberculosis, or that he had had rheumatism, or that he had consulted and been treated by Dr. Kirkland the year before, or that Satterly made any examination of Peterson. So far as appears he only inquired into the professional standing and general character of Dr. Bryan because he was a stranger to defendant and the physician who had last attended Peterson. We fail to find in these facts anything to estop defendant from setting up the defense here presented.

The judgment is affirmed.                    *Affirmed.*