### SUSSWEIN v. PENNSYLVANIA STEEL CO.

(Circuit Court, S. D. New York. December 17, 1910.)

1. LANDLORD AND TENANT (§ 157*)—CONSTRUCTION—GRADING LEASED PROPERTY.

    Where defendant leased certain property from plaintiff and as a part of the lease agreed to make a necessary fill inside the crib of a dock to be built on certain riparian land from the upland, and to grade the remainder of the land from V. avenue to the dock, defendant was bound to "uniformly grade" such land from V. avenue to the dock.

    [Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 157.*]

2. LANDLORD AND TENANT (§ 157*)—LEASE—CONSTRUCTION—INDEPENDENT COVENANT.

    A lease provided that the lessee should build and construct a certain crib dock on the leased land and on adjoining premises belonging to the lessor; that the lessor should pay the lessee a further consideration of $3,500 in cash on the completion of the dock; and that the lessee should make the necessary fill inside the crib from the upland, and should grade the remainder of the land from V. avenue to the dock. *Held,* that the lessor's covenant to pay $3,500, and the lessee's covenant to grade, were independent, and since performance of the lessor's covenant was but a small proportion of the consideration for the lease, the lessor's failure to perform the same was no defense to the lessee's failure to grade.

    [Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 157.*]

3. LANDLORD AND TENANT (§ 157*)—LEASES—COVENANTS—RELEASE.

    Dismissal of a lessor's counterclaim for breach of the lessee's covenant to do certain grading, as premature, did not release the lessee from the covenant.

    [Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 157.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. ELECTION OF REMEDIES (§ 7\*)—WHAT CONSTITUTES DISMISSAL OF COUNTER-CLAIM.**

Dismissal of a landlord's counterclaim for a tenant's failure to grade certain of the leased premises, in a suit by the tenant to recover money from the landlord, on the ground that the counterclaim was premature, did not constitute an election of remedies affecting the landlord's subsequent right to sue for breach of such covenant.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 12; Dec. Dig. § 7.\*]

**5. LANDLORD AND TENANT (§ 157\*)—CONSTRUCTION—LEASE—EXTENT OF WORK.**

Where a lease of certain land required defendant to construct a dock on the premises leased "and adjoining premises" and to make the necessary fill inside the crib from the upland, and to grade the remainder of the land from V. avenue to the dock, the contract required defendant to fill not only the land inside the crib, but the "adjoining premises" as well.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 157.\*]

**6. LANDLORD AND TENANT (§ 159\*)—BREACH—MEASURE OF DAMAGES.**

In an action for breach of a lessee's covenant to fill the crib of a dock and adjoining premises, the measure of damages is the cost of the work.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 159.\*]

**7. LANDLORD AND TENANT (§ 159\*)—CONTRACT—BREACH—DATE.**

Where a lease provided that a lessee should build a dock on the leased premises, and make the necessary fill inside the crib from the upland, and grade the remainder of the land from V. avenue to the dock, and to surrender the premises on the lessee's completion of its work on a certain bridge, and the lessee failed to do the grading required, the lessor's damages dated from the lessee's actual removal from the property and not from the lessor's notice of breach.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 159.\*]

**8. WORK AND LABOR (§ 14\*)—PERFORMANCE—CONDITION PRECEDENT—QUANTUM MERUIT.**

The rule that where one party has performed an obligation and without excuse refuses to complete the performance which as a whole is a condition precedent, he may not sue on a quantum meruit for what he has done, does not apply where the performance is not a condition precedent to the express obligation arising under the contract.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 31–33; Dec. Dig. § 14.\*]

At Law. Action by Henry M. Susswein against the Pennsylvania Steel Company. Judgment for plaintiff.

Plaintiff sued at law to recover damages for breach of defendant's covenant contained in a lease to grade certain property. In a former action in the state court (117 N. Y. S. 436) this covenant had formed the basis of a counterclaim which was disallowed on the ground that it was premature, and in that action the Pennsylvania Steel Company recovered for breach of plaintiff's covenant to pay $3,500 on completion of the dock referred to in the lease. On the filing of the counterclaim in such suit, the steel company discontinued performance of its covenant to grade, and when its own business was completed on the premises leased moved off prior to the time specified for the expiration of the lease. The following is a copy of the lease:

"This agreement entered into this ninth day of October nineteen hundred and six, between Henry M. Susswein, of the city and county of New York, and the Pennsylvania Steel Company, a corporation of the state of Pennsylvania;

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Witnesseth: That the said Henry M. Susswein hereby leases to the said Pennsylvania Steel Company a tract or parcel of land, described and bounded as follows:

"Commencing at a point where the northeasterly line of land recently acquired by the city of New York, for the building of Blackwell's Island Bridge intersects the pier and bulk head line, approved by the Secretary of War June 1st, 1893. Thence running northeasterly along the said bulk head line a distance of one hundred and fourteen (114) feet; thence southeasterly and parallel with the northeasterly line of the property so acquired by the city of New York a distance of ninety feet (90); thence southwesterly and parallel with said bulk head line a distance of fifty-nine (59) feet; thence southeasterly and parallel with the line of the property of the city of New York to a point on the northwesterly side of Vernon avenue, at a distance of sixty-five (65) feet northeasterly from the point where the line of said Vernon avenue intersects the northeasterly line of land recently acquired by the city of New York for the Blackwell's Island Bridge; thence southwesterly along the line of Vernon avenue, a distance of sixty-five (65) feet to the land of the city of New York; thence along the boundary line of the said land of the city of New York, to the point or place of beginning, upon the said bulk head line.

"Such property being shown upon a blue print drawing entitled 'Property Plot' to be leased from Henry M. Susswein dated September 27th, 1906, initialed by the parties hereto.

"To have and to hold the said above mentioned property for a period of two years from the date of the completion of the dock to be erected, and hereinafter mentioned; together with the right of free and absolute enjoyment of said property and all that portion of the dock to be erected included herein. The building of said dock, however, not to take more than three months and to commence promptly upon the granting of a clear title to land under water, by the land board of the state of New York.

"In consideration of the aforesaid lease, the Pennsylvania Steel Company agrees as follows:

"To build and complete and furnish all necessary material for a crib dock upon the said premises and adjoining premises belonging to the said H. M. Susswein, in accordance with the plans and specifications annexed hereto, the said dock to belong to the said Susswein.

"The said Henry M. Susswein agrees on his part to pay to the Pennsylvania Steel Company in further consideration, the sum of thirty-five hundred (3,500) dollars in cash upon the completion of said dock.

"The said Pennsylvania Steel Company further agrees to make the necessary fill inside of said crib from the upland and to grade the remainder of said land from Vernon avenue to said dock.

"The said Pennsylvania Steel Company further agrees that if it finishes its work upon the Blackwell's Island Bridge before the period of this lease expires, it will vacate and surrender the said property to the said Henry M. Susswein, when it completes said work, and it further agrees that when it surrenders the said property to the said Henry M. Susswein, it will put said dock in the condition called for in the plans and specifications, reasonable wear and tear excepted, and that it will remove all structures and materials placed upon said property by it within the period covered by this lease.

"In witness whereof the parties hereto have hereunto placed their hands and seals the day and year first above written.

"[Corporate Seal of The Pennsylvania Steel Company is here affixed.]

"The Pennsylvania Steel Co.,
"By E. C. Felton, Pres.

"Attest: [Signature unintelligible] Secretary.
"Witness as to Henry M. Susswein:          Henry M. Susswein.   [Seal.]
      "Walter Coles Cabell."

Roger Lewis (Bronson Winthrop and George Roberts, of counsel), for plaintiff.

Battle & Marshall (H. Snowden Marshall, of counsel), for defendant.

HAND, District Judge. The phrase "grade the remainder of said land from Vernon avenue to said dock" means "uniformly grade" such land, and therefore the defendant has from any point of view never performed its obligation, because it has never uniformly graded the leased portion of the land from Vernon avenue to the dock. It will be more orderly to consider under the question of damages whether it was also obliged to grade the unleased portion. At present I consider merely the question of breach.

The question is whether the obligation to grade was conditional upon the performance of the promise to pay $3,500. It is undoubtedly the general rule to construe promises as dependent in cases of any doubt, nor do I think that there is a difference in principle in the case of leases, though usually in application covenants in leases are construed as independent. Surplice v. Farnsworth, 7 Man. & Gr. 576; Thompson E. L. Co. v. Durant L. I. Co., 144 N. Y. 34, 39 N. E. 7. In this case, however, I am satisfied that the promise to grade was independent of the promise to pay. By the grant the lessee had obtained the absolute right of possession for the whole term. There being no condition subsequent in the lease, no default of his could deprive him of his quiet enjoyment. For this term he promised to build the dock and to grade the land. Thrown in parenthetically after the promise to build the dock and before the promise to grade was the promise to pay $3,000 "upon completion of the dock." Its position in the contract indicates that this covenant relates to the building of the dock, and the time of payment strongly corroborates this conclusion. Indeed no person looking impartially at the contract could doubt that the sum was to pay for the dock pro tanto, and was not to pay in advance for any part of the grading. If so, the case is within one of the tests of Lord Mansfield in Boone v. Eyre, 1 H. Bl. 273, because the payment does not go to the whole of the consideration of the contract, but is apportioned to the promise to build the dock. Ellen v. Topp, 6 Ex. 441; Howe v. Howe & Owen Ball Bearing Co., 154 Fed. 820, 83 C. C. A. 536; Kauffman v. Raeder, 108 Fed. 171, 47 C. C. A. 278, 54 L. R. A. 247; Palmer v. Meriden Britannia Co., 188 Ill. 508, 59 N. E. 247. However, that may not always be conclusive. Thus the failure to pay for a past installment of work already performed or of goods delivered would excuse further work or deliveries. Phillips & Colby Construction Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; Graf v. Cunningham, 109 N. Y. 369, 16 N. E. 551; Wharton v. Winch, 140 N. Y. 287, 35 N. E. 589. It is not, therefore, always enough that the default should be in performance of a part of the contract which is clearly apportioned to a stipulation on the other side already performed. One is not necessarily required to go on indefinitely performing a contract for another who remains persistently in default, even in respect of a covenant of the contract which is apportionable to a part of the performance. It is not enough, therefore, in the case at bar, that the payment was clearly intended to be applied upon the dock. Nevertheless, the facts here still warrant construing the covenants as independent. The promise to grade was of much more moment than the promise to pay $3,500, as the

proof on this trial shows. Suppose that the lessor was unable to get the money to make the payment at the time when it was due, should that absolve the lessee from an obligation of nearly ten times the amount? The question is always one of implied intention, and no one can doubt that if such a contingency had been brought to the parties' attention, they would not have said that so small a default should entirely excuse so important an obligation. The lessor, having given all but this, and having got as yet only the dock, would lose the grading, a result quite clearly a forfeiture, which of course the parties must not be presumed to have intended. There was no escape from this if the lessor's performance is a condition, and it is on that account that lessor's covenants to repair are regarded as independent. Indeed the case is much stronger than the usual lease, because in those there are conditions subsequent forfeiting the estate which are not present here. Thus the lessor might protect himself for the lessee's failure to grade by re-entering, at least at the time when it became apparent that the lessee could not do the work within the term. That situation would be similar to those arising under contracts for the delivery of merchandise in installments. In those cases the buyer's default in paying for a past installment excuses further delivery by the seller, because he has not already received the whole remainder of the purchase price. If such contract started with a payment of all but a small part of the purchase price delivery would not be conditional upon payment of the balance unless the goods were obviously apportionable to it. While the matter is always treated as though it concerned the parties' intention, it would be more literally accurate to acknowledge that the parties thought nothing about it, and that the court implies the conditions from reasons of equity. From that aspect, it is obvious that the performance should not be a condition precedent. I shall therefore construe the promises as independent, following the opinion of the Appellate Division, whether that part be strictly obiter or not.

The defendant urges that the result is inequitable, especially because of the prior action in the state court. So far as concerns that action, it is true that the lessor's counterclaim for damages was premature, but that did not release the lessee; nor was it an election which excused the lessee, though the action remained pending till the lease expired. It was no more than a mistake by the lessor of his rights, and that is not an election. Bierce v. Hutchins, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828. It is also true that the action on the counterclaim put the lessee in an embarrassing position. To continue to grade meant to take the chance of a judgment on the counterclaim, and to stop meant a suit for damages. The difficulty, though very real, only arose, however, from the uncertainty of the result in the courts, which after all, the courts cannot make a ground for the release of an obligation. Besides, the only alternative which was open, i. e., that the lessee shall have free enjoyment of the lease, was more unjust than the lessee's own plight, for it would mean that the lessor's mistake forfeited the rent. In fact, the lessee followed a course which makes him pay but once, though it is true that he must lose costs in this court. More-

over, he has received his whole consideration, though it took time to get it. Had he been punctilious to avoid any default his only course was to be confident of his own construction as to the time within which he might grade, which proved correct, and to contest, as he did successfully, the lessor's premature counterclaim. While the lessor's positions were not commendable, they did not amount to a forfeiture of his contract rights, nor did they put the lessee to any perilous course, as the event here shows.

There being a breach, the remaining question is of damages. First, in respect of what part of the land the lessee was to grade, I agree with the construction of the Appellate Division, which was that the covenant included both the leased and the unleased parts. The dock is to be built on both portions, "premises and adjoining premises," and "the necessary fill inside of said crib," necessarily includes a fill upon the "adjoining premises." It would be a forced construction to interpret, as one must, "fill from the upland," as referring to both leased and unleased parts, but yet interpret, "remainder of said land," as meaning only the leased part. The limits of both pieces were fixed in the second of the three contracts so that they were known. Moreover, that contract says that the lessee is to "commence the building of the said dock and to fill in the land and grade the upland," and it does not distinguish between the land to be graded and the land to be filled. Besides, there could have been no purpose in taking rock out from the unleased part, as the lessee did, while earth still remained, unless the lessee supposed itself under obligation to grade both pieces. It was apparently cheaper to bring in earth from elsewhere than to blast rock; and in any case there now remain nearly 3,000 yards of earth on the unleased portion which were equally available as a fill instead of the rock actually used. This must have been a practical construction of the contract by the lessee.

The next question is whether the true rule of damages is the cost of the repairs, or the difference in value of the premises before and after the repairs. If the plaintiff wishes, I will reopen the case to let in proof of the difference in value, but I think the true rule is that of the cost of the repairs, and not the value. By far the great weight of authority is in favor of the rule that the cost governs. In New York the authoritative decision is Appleton v. Marx, 191 N. Y. 81, 83 N. E. 563, 16 L. R. A. (N. S.) 210, and while, even in the case of a covenant for repairs in a lease, damages is a matter of the lex fori, still the decision is persuasive, especially as the discussion of the authorities is very full. That case certainly overrules anything in Kidd v. McCormick, 83 N. Y. 391, though I hardly think a careful reading of that case would justify the supposition that the rule of cost was repudiated. It is true that a referee's report based on difference in value was sustained in that case, but the court in speaking of the three ways of reaching that difference mention as two of them the cost to repair, either prospective or actual.

In Massachusetts the rule may fairly be said to be in some doubt, for while Moulton v. McOwen, 103 Mass. 587, looks in the defendant's direction, and White v. McLaren, 151 Mass. 553, 24 N. E. 911, seems squarely in point, Watriss v. Cambridge National Bank, 130 Mass.

343, is equally squarely to the contrary. Even if the last case govern in that jurisdiction its authority is somewhat weakened. The rule in England is undoubted. Upon principle it must be confessed that there is some question whether the rule ought not to be the difference in value, but there is equally no question in my judgment that prima facie the cost of the repairs represents the difference in value and that the obligee having shown cost, may safely rest in the absence of proof that the repairs would not add the cost to the value of the property. In any event the authority I deem to be conclusive upon me.

The next question is of the cost. The testimony was divergent and it was hard to tell which of the witnesses was correct for all seemed truthful enough. The fact undoubtedly is that there was no certainly fixed rate for the work. I am disposed to take for the figures in the summer of 1908, for rock, $2.25, for earth carried off, $.75, for earth used in the fill, $.55. The same figures for October, 1908, will be $2.35, $.85, $.65. The proof as to the use of the rock is somewhat uncertain, but there seems to have been a market for the stone in 1908 which reduced the cost to the contractors. Whether that affected the figures which they would bid for the work is very doubtful. The only witness who swore to that fact says the saving was a perquisite which the contractor kept. I am on the whole not disposed to think that it was more than an accidental profit, though substantial, which would not have made much difference to either party here when he came to do the work.

The last question is of the date of the damages. I think the date of the lessee's actual removal should govern, and not the date of the lessor's notice. The lessee's occupation and removal were open and apparent; the lease especially gave them the right to withdraw before the term was up. Such a withdrawal certainly affected a surrender and put the lessor back into possession in law. In the absence of a provision requiring it, I do not think that notice was necessary, but that the lessor was chargeable with learning when he came into legal possession of the land. The cases requiring notice are all those where the person entitled to it had no reasonable means of knowing when the event occurred or whether it would occur. Smith v. Goff, 2 Salkeld, 457; Vyse v. Wakefield, 6 Mees. & Welsby, 442; Drew v. Goodhue, 74 Vt. 436, 52 Atl. 971; Humphreys v. Gardner, 11 Johns. (N. Y.) 61. If Susswein failed in fact to learn until some months afterwards that the defendant had left, it was his own fault. It was easy enough to learn it within a few days of its occurrence with a minimum of trouble and expense.

One question raised by the defendant requires further notice. It urges that where a party has deliberately and willfully broken a contract, he may not thereafter sue on it. Smith v. Brady, 17 N. Y. 173, 72 Am. Dec. 442. The rule of law there established is quite generally followed, and is this: That where one party has performed a part of an obligation and without excuse refuses to complete the performance which as a whole is a condition precedent, he may not sue in the common counts on a quantum meruit for what he has done. The rule has absolutely no application where the performance is not a condition precedent to the express obligation arising under the contract, and it

merely decides that the party who has received the performance may in good conscience keep it, in view of the other party's willful default. It has no application to this case.