————o————

| 52 | 497 |
|---|---|
| 41a | 190 |
| 52 | 497 |
| 57a | 404 |
| 52 | 497 |
| e98a | 259 |

WILLIAM C. BUTLER, Administrator of ELIZA BUTLER, deceased, *et al.*, Respondent, *vs.* EDMUND A. MANNY, Appellant.

1. *Contracts—Covenants, dependent—Consideration.*—Covenants in a contract are dependent, which are mutual and go to the entire consideration.

*Appeal from St. Louis Circuit Court.*

*S. Knox, and A. M. Gardner,* for Appellant.

1. Plaintiffs had no right to claim a renewal except of the whole leasehold property described in their lease. Unless they did claim such renewal, they had no claim for the value of the buildings, nor, under the provisions of the lease, was there any valuation of the buildings to be made, until the expiration of the renewal term. (Taylor on Landlord & Tenant, § 335, 4th Edition ; 6 John. Ch. R., 215 ; Pearce vs. Colden, 8 Barb. 522 ; Pike vs. Butler, 4 Barb. 3.)

2. Neither law or equity will give relief where there have been breaches on part of lessee. (City of London vs. Mitford, 14 Vesey Jr. 40 ; Maxwell vs. Ward, 1 McCld., 464 ; Eaton vs. Lyon, 3 Vesey Jr., 690.)

*Lackland, Martin & Lackland,* for Respondents.

" Where a covenant goes only to part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and an action may

32.—VOL. LII.

be maintained for a breach of the covenant by the defendant, without averring performance in the declaration." (Pordage vs. Cole, 1 Saunders, 320, n. 4, [5th Am. Ed.]; Boone vs. Eyre, 1 H. Black, 273, note [a,]; Duke St. Albans vs. Shore, 1 H. Black, 270; Campbell vs. Jones, 6 T. R. 570.)

2. A covenant of renewal is a covenant on the part of the landlord. [Taylor's L. and T., 233.] It is a privilege in the hands of the tenant.

Vories, Judge, delivered the opinion of the court.

The petition in this case shows the following state of facts as a cause of action: That in December 1851, Frederick W. Beckwith, Tullia C. Beckwith, Amedee Valle and Lewis C. Smith, as trustees of the said Tullia C. Beckwith, by their deed of lease demised a certain lot in St. Louis, being 69 feet, 3 inches by 127 feet six inches, to James T. Pettus for the term of ten years from the first day of January 1852.

That afterwards on the first day of April 1853, the said James T. Pettus transferred to Henry M. Dedman, trustee of Martha Butler, for her sole use and benefit, by deed of that date, 42 feet by 69 feet of ground, being part of the lot first above demised, and that the said Martha Butler then became the lessee, &c., that afterwards the said Pettus by deed, dated December 1st, 1853, conveyed and transferred to defendant Edward Manny all of his right and title and leasehold estate in and to the land and lots named in the said first named lease to said Pettus, as is above stated, and that the said Martha Butler attorned to and became the tenant of said Manny under the transfer or lease made to her by said Pettus: That afterwards the said Martha Butler and her trustee Henry M. Dedman, conveyed and assigned by deed, dated 25th Sept. 1856, to Julia Butler, Eliza Butler, and Mary M. Dedman, formerly Mary A. Butler, daughter of Martha Butler, all their right and interest in and to the said lot or parcel of land before conveyed or assigned to them by said James T. Pettus as aforesaid, and that the said grantees of the said Martha Butler and her trustee, became the tenants of the said defendant Manny. That said lease or demise, by which said grantees or

lessees Julia and Eliza Butler and Mary M. Dedman held, was for the term of nine years from and after the first day of January, 1853.

That by the terms of the lease of said Pettus to Dedman, trustee of Martha Butler, it was expressly covenanted and agreed, that all the agreements and covenants specified in the said lease from the trustee of Tullia C. Beckwith to said Pettus first above stated, said Pettus bound himself and his heirs to do and perform, and that one of. said covenants was that all the agreements, stipulations and covenants of said lease of Tullia C. Beckwith's trustee to said Pettus being fully kept and performed during the term therein named and the renewed term, that he the said Pettus, his heirs, or assigns, would pay to said Dedman, trustee of Martha Butler, and her assigns, the value of the permanent improvements on said lot conveyed in the lease by said Pettus to Dedman, trustee of Martha Butler, the value of said improvements to be determined by two disinterested house holders of the city of St. Louis, one to be chosen by Pettus or his assigns, and the other by said Martha Butler or assigns, and in case of disagreement they were to call in a third person, and the award of any two was to be final, and that by said assignment or conveyance of said Pettus to said defendant Manny, on the first day of December, 1853, said Manny became a party to all of the agreements and covenants contained in said lease of Tullia C. Beckwith's trustee to said Pettus of December 13th, 1851, and agreed thereby to pay said Martha Butler and assigns for said permanent improvements referred to according to the covenants of said lease. That at the date of the expiration of said lease, the first of January 1862, said permanent improvements consisted of a brick house and out houses of the value of three thousand dollars.

That after the termination of the first lease for ten years, said Mary M. Dedman for herself and co-tenants proposed to said Manny, their landlord, to select a disinterested householder of the city of St. Louis, and requested said Manny to select one on his part, to value the improvements as is provided in the lease, but that he refused so to do.

That plaintiffs have performed all covenants and agreements in said lease on their part; that defendant has refused to pay plaintiffs for their interest in said improvements; that defendant has been in possession of said premises and improvements for about eight years.

That in March 1863, Eliza Butler died childless, never having been married, and having no parents living, and that her third interest in the leased premises thereby vested in Julia Butler, Wallace C. Butler, Mary M. Dedman, and the heirs of Adaline Samuels, who was a sister of Eliza Butler and had children living at her death: that Mary M. Dedman in March, 1863, sold to defendant all her interest in said improvements for a valuable consideration, which interest was one-third part of the same.

That the remaining two-thirds of said buildings, or the interest therein, belongs to plaintiffs in equal parts, that defendant has failed and still refuses to pay plaintiffs the same.

That the remaining two-thirds of said buildings, or the interest therein, belongs to plaintiffs in equal parts, that defendant has failed and still refuses to pay plaintiffs for the same:

That the said Wallace Butler is the rightful administrator of the estate of said Eliza Butler deceased. Plaintiffs pray judgment for $2,000, that being two-thirds of the value of the improvements.

The answer of the defendant denies that Mary M. Dedman for herself and co-tenants requested defendant to select disinterested householders to value said improvements, as charged, or that the lease contained any covenants under which defendant was required at the time named to make any such selection or valuation, or that any valuation was then required to be made; denies that the lessees or plaintiffs have complied with or performed the agreements contained in the lease by them to be performed, and charges that they have utterly failed so to do:

That in the lease from Mrs. Beckwith's Trustee to Pettus and from Pettus to Martha Butler's Trustee it was covenanted, that the said Martha or her assigns, should pay to the lessor or

his representatives the annual rent of $86, payable semi-annually on the first days of July and January, and pay all taxes, &c., and also give said lessor or his representatives three months notice in writing of their intention to renew said lease, before the first day of January 1862, all of which covenants said lessees and plaintiffs failed to perform :

That at the time last aforesaid there was due defendant for rent $86, also the sum of $23.35 for State and County taxes for 1861. That defendant offered to renew said lease, which the lessees and plaintiffs refused, but abandoned the premises at the end of ten years, and suffered the improvements to decay and waste, by which defendant was damaged, &c.:

That in consequence of the failure on the part of the lessees and plaintiffs to perform said lease, they lost all rights to pay for said improvements :

That in January 1863, long after plaintiffs had abandoned the premises, at the request of Mary Dedman acting for herself and co-tenants in the presence of Julia A. Butler, one of the plaintiffs, defendant paid her the sum of $800 in full satisfaction for any and all claims she or they might have in said premises or improvements, since which time he has been in the quiet possession thereof, plaintiffs making no claim thereto until the commencement of this suit.

The answer also avers, that defendant has fully complied with the covenants of the original lease, &c.

A replication was filed to the answer.

At the trial a jury was waived, and the case tried by the Court.

The original lease from the Trustees of Tullia C. Beckwith to James L. Pettus was first read in evidence. This lease was dated December 13th, 1851, and demised the premises named to the said Pettus for the term of ten years from the first day of January 1852, for the annual rent of $346.25 payable on the first days of July and January of each year ; it was further provided by the lease, that, if the rents were not paid, &c., the lease could be forfeited at the option of the lessor. Said lease also contains the following covenants.—"And the

said parties of the first part for themselves their heirs and assigns, covenant with the said party of the second part his executors, administrators and assigns, that all the covenants and stipulations of this lease being fully kept · and performed by said party of the second part and his assigns, that they will renew this lease for another period of ten years, upon being notified in writing three months before the expiration of the term herein demised, and upon such renewal an annual rent to be reserved of six per centum upon the valuation of said lot, payable in semi-annual instalments upon the same days as provided in this lease. The valuation to be determined by two disinterested householders of the City of St. Louis, one to be selected by the parties of the first part their heirs or assigns, and the other to be selected by the party of the second part his representatives or assigns, and if the persons thus selected · cannot agree they shall call in a third householder, the award of any two to be final and binding, &c. ;" said lease also contains the further covenants, as follows: "The said parties of the first part covenant that all the agreements, stipulations and covenants of this lease being fully kept and performed during this term and the renewed term, that they, their heirs and assigns will pay to the said party of the second part his representatives or assigns, the value of the permanent improvements on said premises, the value of said improvements to be determined by persons selected in the manner above prescribed, and the said party of the second part or his assigns may remain in possession of said premises and may receive the rents and profits of the same, until the sum thus found to be due shall be fully paid."

Plaintiff next read in evidence the lease from Pettus to Martha Butler's trustee, (for a part of the same lots) for nine years, from January 1st, 1853, at a ground rent of $86, payable semi-annually, and taxes, subject to all of the covenants in the former lease, Plaintiff next read in evidence the conveyance and assignment of Pettus to Manny, dated December 1st, 1855, by which all of his estate and leasehold in the premises is conveyed to Manny.

Next, deed from Martha Butler's trustee to Julia A. Butler, et al. The plaintiffs also gave oral evidence, which tended to prove the allegations of the petition, and the value of the improvements, and which tended to prove that all of the taxes and rents had been punctually paid when they fell due. The defendant gave evidence which tended to prove, that the rents were almost always paid to plaintiffs by Mrs. Dedman, occasionally it would be paid by her sister; that the tax bill for 1861 of $23.35, was not paid by the lessees, but by defendant, and that part of the rent had not been paid by Mrs. Dedman.

The defendant testified, that in 1861 he urged Mrs. Dedman to have the lease renewed; that he never heard of an offer to have appraisers appointed to estimate the value of improvements by Mrs. Dedman in 1862; that in 1862, Mrs. Dedman and her sister came together to defendant's store, and wanted defendant to buy the house, Mrs. Dedman saying that she and her sister had made up their minds to sell, that she was agent for all of them; she proposed to sell the whole house; that he paid them $800 for the house, all that it was worth at that time, that kind of property at that time had a mere nominal value, &c. He also took a receipt for the eight hundred dollars, which was read in evidence, as follows: " St. Louis, January 30th, 1873. Received of E. A. Manny, eight hundred dollars, in full payment for the house on Chouteau Avenue, bought by our late father, Mann Butler, of James L. Pettus, and which is on the south side of Chouteau Avenue, the third door west of the corner of Seventh, possession given immediately.

Mary M. Dedman."

At the close of the evidence, the court at the request of the plaintiff, declared the law as follows : " The covenants in the pleadings and lease to pay taxes is not such a condition precedent to the plaintiff's right of recovery on the covenant to pay for the improvements, as that a failure to pay the State and County taxes of 1861 can defeat the right of action for the improvements." " Unless Mrs. Dedman had authority

from Miss Julia A. Butler, and from the administrator of Eliza Butler, to sell their interest in said improvements, then the sale by her is void as to said parties, and could not carry any other interest than her own."

" Under the evidence there never was any forfeiture of the plaintiff's lease."

To the giving of these instructions, defendant objected and excepted. The court, at the instance of the defendant, declared the law to be: "If the court find from the evidence that Mrs. Dedman, acting with the knowledge, consent or approbation of those claiming an interest in the buildings in ques-. tion, applied to the defendant to sell the interest of the legal representatives of Martha Butler; that under the above circumstances, the defendant supposing and believing that whatever interest the legal representatives of the said Martha Butler had, was purchased in the payment of said sum of eight hundred dollars, and said money was paid for said interest, then the plaintiffs are not entitled to recover in this action."

2nd. "The plaintiffs can only recover in this case for their interest in the buildings on the leasehold property claimed by them; the value of the building is to be taken at its worth in January, 1862."

3rd. "If Julia Butler was present when defendant paid the sum of eight hundred dollars to Mrs. Dedman, said money being tunderstood by the parties there present to be paid for the interest of the legal representatives of Mrs. Martha Butler in the buildings in question, and when said money was so received by said Martha, she paid a portion of the money to said Julia, as a portion of her (said Julia's) interest in said money, then said Julia cannot recover in this case."

The court refused the following declarations of law asked for by defendant, and he excepted: " Unless the court find from the evidence, that the plaintiffs had on the first day of January, 1862, complied with all the covenants, stipulations and agreements which are contained in the lease under which they claim, and with which they had agreed to comply, then the plaintiffs are not entitled to recover in this case."

2nd. ."If the court find from the evidence, that the plaintiffs, or those under whom plaimtiffs claim, refused to renew the lease in question, the term of which expired January 1st, 1862, then the plaintiffs cannot recover in this case."

3rd. "By the terms of the lease read in evidence by the plaintiffs, the plaintiffs have no right to recover for the value of the buildings thereon, before January 1872." .

4th. "If the court find from the evidence, that the plaintiffs claim the right to recover in this action under a certain lease, dated December, 1851, wherein it is provided, that by giving three months notice of a desire to renew said lease, the same should be renewed for ten years after the expiration of the first term of ten years, then the plaintiffs are not entitled to recover in this case, unless, in conformity with the terms of said lease providing for a renewal, the three months notice there required was given, as is provided for in said lease."

The court found for the plaintiffs, and rendered a judgment in their favor for the sum of $1,500. The defendant then filed a motion for a new trial, and set forth as grounds therefor, amongst other things, the opinions of the court excepted to, and because the judgment is against law and evidence. This motion being overruled, the defendant again excepted, and appealed to General Term of said Court, where the judgment was affirmed, and defendant has appealed to this court.

So far as the facts in this case are concerned, they have been passed upon by the court that tried the cause, and will therefore not be examined here. The questions submitted for the consideration of this court grow out of the giving of instructions or declarations of law, by the court, asked for by the plaintiffs, and objected to by the defendant, and the refusal of the court to declare the law as requested by the defendant, and these questions depend on a proper construction of the lease first read in evidence. It is contended by the defendant, that the covenant to pay rent and taxes on the part of the lessee, and the covenant to pay for the permanent improvements at the expiration of the lease, were mutual dependent covenants, and that if any part of the rent or taxes

remained unpaid at the expiration of the lease, that the lessees could not recover for said improvements, By the terms of the lease, the lessee agrees to pay the rent semi-annually for ten years, to be paid on the first day of July and January of each year, and he also agrees to pay the taxes and assessments, but no time is fixed by the lease for the payment of the taxes, it is therefore left to the presumption, that they will be paid as they become due; these covenants do not depend at all upon the covenant of the lessor to pay for the improvements after the lease has expired, but they are necessarily independent of such covenants, and may be sued on when broken, without any reference to the performance by the lessor of his covenants to pay for the improvements at the expiration of the term; and again, these covenants to pay the rents by instalments and to pay taxes, each only goes to a part of the consideration of the performance of the contract on the part of the lessor, and cannot therefore be mutually dependent covenants; covenants to be dependent must be mutual, and go to the entire consideration. (Smith vs. Busby, 15 Mo. 387; Bennett vs. Pixley, 7 John., 249; 1 Saunders, 320; 20 John., 15; 15 Pick., 546.) The mere recital in the lease, that the agreements in the lease to be performed by the lessees being performed, the lessor will at the expiration of the lease pay for the improvements, &c., does not have the effect to make independent covenants in the lease, dependent; these covenants, if violated at any time, can be sued on, and their violation compensated for in damages, and the lessor has expressly provided in the lease for the securing of the performance of these covenants, by providing that if the rent remains unpaid for sixty days he may exact double rent, or that if either the rent or the taxes shall remain unpaid, the lessor at his option may forfeit the lease. These provisions show that the covenants to pay rent and taxes are independent of the covenant to pay for the improvements at the termination of the lease. But it is contended by the defendant, that the terms of the lease required the lessees, before they could recover pay for their improvements, to renew the lease at the

expiration of the first term of ten years. If the defendant is correct in this construction of the lease, then of course the instructions refused by the court ought to have been given, and the judgment ought to be reversed.

The language of that part of the lease relied on for this construction, is this : " The said parties of the first part, covenant that all agreements, stipulations and covenants of this lease, being fully kept and performed during this term, *and the renewed term,* they, their heirs and assigns will pay to the said party of the second part, &c."

Now it is contended that there is no promise to pay, unless the lessees renew the lease, and that no action can be brought to recover for the permanent improvements before 1872. It will be recollected, that it was provided by a former clause of the lease, that all covenants, &c. being performed by the lessee or his assigns, the lessor will renew the lease for another period of ten years, upon being notified in writing three months before *expiration of the time herein demised.* It will be seen by this that the lessee made no agreement to renew the lease, or to accept a renewal thereof, but the lessors covenanted that they would renew the lease, provided that they got three months' notice in writing of the lessee's desire to have it renewed. It was a privilege that was given to the lessee to have the lease renewed, if he gave the required notice. If we construe these two clauses together, we find their evident meaning to be, that the covenants of the lease being kept for this term, and the renewed term (if the term is renewed,) the lessors, their heirs and assigns will pay, &c. The lessee was not bound to take a renewal of the lease if he did not wish so to do, and gave up the premises at the expiration of the time for which it was leased. He, by a fair construction of the lease, was entitled to receive pay for the improvements. We think that the words " *if the term is renewed* " are just as well implied after the words " *renewed term,*" as if they had been written in the lease. These questions being the only ones discussed or relied on by the appellant, and believing that the court that tried the cause construed the lease

correctly, and properly refused the instruction refused, and that the instructions given were proper, the judgment ought to be affirmed.

Judge Wagner absent. The other Judges concurring, the judgment is affirmed.