[No. 8011.  *En Banc.*  October 29, 1909.]

## CATHERINE TOELLNER et al., *Appellants,* v. IDA J. McGINNIS et al., *Respondents.*[1]

LANDLORD AND TENANT—LEASES—RENT—REENTRY.  Default in the payment of rents, and reentry by the landlord under process in an action for unlawful detainer, works a forfeiture of all right to rents subsequently earned.

LANDLORD AND TENANT—LEASE—COVENANTS — CONSTRUCTION.  A stipulation in a lease requiring a landlord to pay the lessee for improvements, at the end of the term, is one for compensation, and the intent of the parties, construing the lease as a whole, determines whether the same is dependent upon the payment of rents, irrespective of the fact that the improvements have become part of the real estate.

LANDLORD AND TENANT—LEASE—DEPENDENT COVENANTS—IMPROVEMENTS AND RENT—FORFEITURE OR ABANDONMENT.  Where a lease for a term of years, at a stipulated ground rent payable monthly with right of reentry in case of default, provides that the lessees shall erect a building which shall become the property of the lessors at the end of the term upon payment of a sum equal to two-thirds of its value, the covenant to pay rent and the covenant to pay for the building are mutual and dependent, and the lessee cannot, after abandonment or forfeiture for condition broken and reentry, recover the value of the building or any part thereof (GOSE and MOUNT, JJ., dissenting).

SAME—COMPENSATION FOR IMPROVEMENTS—FORFEITURE—PENDENCY OF ACTION.  The forfeiture of the lessees' right to compensation for a building erected by them, under the terms of the lease, by reason of default in payments of rents and reentry by the landlord, is not affected by the fact that an action for unlawful detainer is pending and undetermined, where it appears that the lessees admitted their purpose to pay no more rent and did nothing in the detainer action to tender rent, protect their interests, or prevent reentry.

SAME—COMPENSATION FOR IMPROVEMENTS—ACTIONS—LIMITATIONS —REENTRY.  Where a lease for a term of years, with right of reentry for nonpayment of ground rents, stipulated that the lessors should at the end of the term, pay two-thirds of the value of a building erected by the lessees, and the lease was terminated before the expiration of the term by the nonpayment of rent and reentry, an action by lessees for compensation for the building under the terms of the lease is barred by the lapse of six years after the reentry.

[1]Reported in 104 Pac. 641.

LANDLORD AND TENANT — LEASE — COVENANTS—FORFEITURE.   The
fact that a lease, with right of reentry for condition broken, con-
tains no forfeiture clause, does not prevent a forfeiture of the lessees'
right to compensation for improvements, upon reentry for nonpay-
ment of rents, where the stipulation for rents and for compensation
were mutual and dependent covenants.

Appeal from a judgment of the superior court for King
county, Morris, J., entered September 22, 1908, upon find-
ings in favor of the defendants, after a trial on the merits
before the court without a jury, dismissing an action to re-
cover the value of a building, and for the rents thereof.   Af-
firmed.

*Shepard & Flett, Lyter & Folsom,* and *Smith & Cole,* for
appellants.

*L. C. Gilman* and *Robert C. Saunders,* for respondents.

CHADWICK, J.—On July 15, 1889, defendant Ida J. Mc-
Ginnis, her husband joining, leased to Isaac Percival and
D. M. Shanks lot 5, block 11, D. S. Maynard's plat of the
city of Seattle, for a term of fifteen years, beginning the 1st
day of August, 1889.   A ground rent of $200 per month,
to be paid in advance, was reserved for the first five years,
the rent thereafter to be $250 per month until the expiration
of the term.   The lease contained the following covenants:

"And it is hereby agreed that if any rent shall be due
and unpaid or if default shall be made in any of the covenants
herein contained, then it shall be lawful for the said parties
of the first part to re-enter said premises and remove all per-
sons therefrom.   And the said parties of the second part do
hereby covenant, promise and agree to pay the said parties
of the first part the said rent in the manner hereinbefore
specified.   And said second parties covenant and agree to
build and erect upon said premises a substantial brick build-
ing not less than two stories in height, costing not less than
$15,000.00 and to be not less than 108 x 60 feet in size, said
building to be commenced at once and completed within six
months from the date hereof.   And said parties hereby cove-
nant and agree that they will at the expiration of said term

purchase of the second parties the aforesaid building at two-thirds of the then appraised value thereof,—said appraisement to be made as follows: First parties to choose one appraiser, second parties to choose the second appraiser, and the two appraisers so chosen to choose a third, and the decision of a majority of the appraisers so chosen to be final and conclusive upon all the parties hereto. And at the expiration of said term the said parties of the second part will quit and surrender the said premises in good state and condition as reasonable use and wear thereof will permit (damage by the elements excepted), and it is expressly understood and agreed that the payment of two-thirds of the value of said building at the expiration of said term by first parties to second parties shall vest the title to said building fully in first parties, either party refusing to appoint an appraiser at the end of said term shall forfeit all rights under this agreement. This lease shall apply to and bind the respective heirs, assigns, executors and administrators of the respective parties hereto."

The lessees erected a brick building on the leased premises at a cost of more than $15,000. Various changes in ownership occurred, both by voluntary conveyances and by operation of law, so that, on January 21, 1898, an undivided two-thirds interest therein was owned by Sarah E. Coulter, under an assignment of date April 30, 1897, executed by H. W. Austin, one of the plaintiffs. An undivided one-third interest was owned by E. W. Mills, subject to a mortgage executed in favor of Catherine Toellner on the 1st day of January, 1898, and for some time prior thereto the property was in the immediate possession of C. M. Austin as agent, with authority to manage and collect the rents for Sarah E. Coulter. On that day defendants began an action against H. W. Austin, E. W. Mills, Catherine Toellner and the tenants in said building, alleging that there was rent due from said defendants to plaintiffs, and that they had also breached the contract in that said plaintiffs had been compelled to pay the sum of $730.04 taxes which had accumulated; and praying for a provisional writ of restitution, that they have judgment for the rent, and that the lease be forfeited. On the

same day they executed a statutory bond, the writ issued, and defendants here, Ida J. McGinnis and her husband W. W. McGinnis, were put in possession of the premises, and have ever since remained in possession and collected all the rents. On October 1, 1898, H. W. Austin filed an amended answer in that case, wherein he disclaimed any interest in the property, and set up the interest of Sarah E. Coulter, his assignee. The default of the other defendants, with the exception of Catherine Toellner, was entered on February 7, 1898.

Just prior to the commencement of the action for unlawful detention, C. M. Austin, the agent in charge of the Coulter interests with authority to collect the rents, told the attorney of these defendants that he would pay no more ground rent or taxes on said building, and, prior to the commencement of the action, E. W. Mills made a like statement to the same party. On October 31, 1898, Sarah E. Coulter, claiming an interest in the lease and property, paid into court the sum of $231.80 as rents and costs, and thereafter, in the fall of 1898, paid in the additional sum of $34, making a total of $265.80, which was the full amount of rents and interest due at the time of the commencement of the unlawful detention action, and costs up to the time of payment, which sum still remains in the registry of the court. At that time she asked leave to intervene. Her petition, coming on for hearing before the court, was denied. She reserved exceptions, but no appeal or further proceedings were taken or had by her. Thereafter she reconveyed all her interest, if any, to H. W. Austin, plaintiff herein.

On March 10, 1902, Catherine Toellner, who in the meantime had foreclosed her mortgage (these defendants were not made parties) and bought the interest of Mills, if any, filed a demurrer in the unlawful detention case, and afterwards filed an answer to the complaint in the original action. No judgment was taken in that case against either Sarah E. Coulter, Catherine Toellner, or E. W. Mills. From the time

the writ of restitution issued until July 31, 1904, the end of the fifteen-year term, the net rents of the leased premises amounted to $25,292.77, without deducting the $732.04 taxes alleged to be due at the time of the commencement of the possessory action. The ground rent, which would have been due and paid had the contract been carried out, would have amounted to $19,500. The lower court found the building to be worth at this time the sum of $15,000. On August 15, 1904, Catherine Toellner and H. W. Austin served notice on these defendants that they had selected M. J. Carkeek as their appraiser, as provided in the lease, and demanded that they likewise appoint an appraiser in order that their respective interests in the leased building and appurtenances might be determined. Catherine Toellner and H. W. Austin began separate actions to recover the two-thirds value of the building, and for rents less the ground rent. These actions were consolidated by order of the court. The consolidated case was referred to a referee, who heard the testimony and reported the facts which we have summarized. No exceptions were taken to the findings of fact by either party, and the court made conclusions of law and decreed that plaintiffs take nothing, and dismissed their action. From this decree, plaintiffs have appealed.

Appellants summarize their several assignments of error under two heads:

"First. The right of plaintiffs, under the terms of the lease quoted, to recover two-thirds of the value of said building at the date of the expiration of said lease.

"Second. The right of plaintiffs to recover the difference between the stipulated rent, from the date of the entry under the writ to the 31st day of July, 1904, and the amounts actually collected by the defendants between said dates, to wit, $5,792.77, as found by the referee."

Reference to the lease will disclose the main question raised by appellants, and, as we view the case, the only question to be decided by us. It is asserted that the covenant to pay

rent with the right of reentry in case of default, and the covenant to erect a building and to pay two-thirds of its value after the full term, are independent of each other, and although the parties may have defaulted in the payment of rent, they are not precluded from recovering the value of the building. On the other hand, respondents insist—and the lower court so held—that they are not entitled to recover on the second covenant unless the first be fully performed; that appellants abandoned, surrendered, and have forfeited all their interests in the lease and their right to recover the value of the building. Whichever be the correct view of the law, we are of the opinion that the default in rent and reentry, under the terms of the lease, work a forfeiture of all right to rents subsequently earned. We must presume that they had no defense to the unlawful detention action, and none is now urged. It is one of the hardships of the law that a right voluntarily foregone in the hour of adversity cannot be reasserted when prosperity has made the right a valuable one. We shall, therefore, pass this point without further discussion.

That it is the duty of a court to construe a contract as a whole, if it is possible to do so, will, we apprehend, be admitted as the general rule. However, if the covenant relied on be in fact independent, it is no defense to this action to say that appellant had defaulted in the payment of rent. It is urged, in support of the theory, that the covenant relied on is independent, and that the parties have put their own construction upon it by providing that the title to the building shall remain in the lessees until the end of the term. The lease says:

"It is expressly understood and agreed that the payment of two-thirds of the value of said building at the expiration of said term by first parties to second parties shall vest title to said building fully in first parties."

It must also be admitted that the right to remove improvements or exact pay therefor, after the term, depends entirely upon the contract of the parties and was unknown to the

common law—"a strong invasion upon it," as has been aptly said. There is another fundamental principle that suggests itself as an added premise for our argument, and that is that, whatever may be the form of the contract or manner of stating it, the building becomes, as it is erected brick by brick and stone upon stone, a part of the land. So that, after all, from the very nature of things, the question is not a question of title reserved in the lessee, or the right to maintain title on the part of the lessor, but primarily a question of compensation; a right, if any, to recover the value of the building or declare a lien and enforce it as an equitable remedy. When so considered, the only question remaining is whether, under all the facts, appellants are entitled to such compensation. A similar contract was before the court in *Kutter v. Smith*, 69 U. S. 491, 17 L. Ed. 830, wherein it was held that, in the absence of a covenant to remove within the term, the contract did not change the rule that the building became a part of the land and the title was in the lessor. To the same effect is *Bass v. Metropolitan West Side El. R. Co.*, 82 Fed. 857. In the case of *California Annual Conference of the M. E. Church v. Seitz*, 74 Cal. 287, 15 Pac. 839, the owner undertook to defeat his agreement to purchase improvements put upon the land by his lessee under a contract providing that he should take them at an appraised value at the end of the term, by setting up the fact that the lessee had assigned and sold his interest in the lease to another; that that part of the contract wherein he had engaged to pay for the improvements was independent of the other parts of the lease, and was not affected by the contract of the lessee who had sold all of his right, title, and interest in and to the lease; in other words, that the form of the assignment was insufficient to carry any interest in the property, so that the assignee might recover its value. The court held that it was a whole contract; that whatever the original parties may have called their engagement, it was nevertheless a contract, and to be construed in

a practical way to meet the intent of the parties.   In Jones on Landlord & Tenant, § 324, it is said:

"Covenants in an agreement will be construed as conditions precedent or as independent agreements, according to the intention of the parties and the good sense of the case, and technical words must give way to such intention.    Therefore, in determining how to class covenants, the safest and best course is to ascertain what was the intention of the parties from the instrument they have executed, and then to give the covenants such a construction as will carry this intention into effect.    If it appears, on the whole, that any substantial part of the agreement on one side is to be performed only on condition of performance on the other, the court is bound to construe the covenants accordingly, whatever may be the order in which they are placed in the instrument or the manner in which they are expressed."

Sighting, then, along the full length of the barrel of the contract, it would seem that it was the intention of the original parties to make a covenant to pay for the building dependent upon the covenant to make the rent return for the land.   The primary object sought to be obtained by the lessors was, no doubt, rent returned, payable monthly for the full term, and by the lessees the use of the ground for which, in addition to the rent, they were willing to advance the cost of a building and receive at the end of the term two-thirds of its value.   This being the manifest intent of the parties, it would be unjust to hold that the one party was bound to the letter of the bond and the other could repudiate the contract which for the time may have become onerous, putting upon the lessor the burden of maintaining a property, possibly unproductive, as well as the payment of added taxes by reason of the structure, and abide the lapse of time when they could claim performance on the part of the lessors.   To so hold would put it in the power of the lessee to withdraw when the tide of prosperity ebbed, and reassert a right when the tide flowed in.   The one promise would not have been made unless the other had been undertaken.   They were mutual and de-

pendent.  Respondents did not agree to buy a building in
any event, but agreed to lease the land *and*, after a certain
term with rent reserved and paid, to buy the building.  The
contract was entire in the beginning; it must be so in the
end.  The fact that its performance may work a hardship
does not make a covenant independent.  That is not the test.

An engaging argument is made against the doctrine of for-
feiture, and our attention is called to the duty of the court
to so construe the contract that a forfeiture will not occur if
it be susceptible of two constructions, and to the further fact
that there is no forfeiture clause in the contract.  We would
be glad to so hold if we could see our way clear to say that
there is room for two constructions.  The fact that there is
no forfeiture clause in the contract is not conclusive of the
rights of the parties.  By the terms of the contract respond-
ents had the right to reenter in case of default in rent, with-
out any engagement to account for the rent or profits there-
after accruing, and whatever the phraseology of the contract
may be, if our theory be correct, a forfeiture resulted.  Or,
if another term be softer, the lease and all defendants' rights
thereunder were voluntarily surrendered.  The meaning of
the covenant to purchase is that the lessors will pay for the
building in a certain event—the payment of the rent for the
term.  There is nothing in the findings of fact that raises
any considerations of equity.  It is true that, in a given
case—possibly in this one, time may work out a condition
where the application of the rule works a hardship on the
lessees.  But for that condition they alone are responsible.
The law, as well as their contract, puts the duty of foreseeing
it upon them.  That another takes the fruit of their labor is
attributable to their own fault, and the law cannot relieve
them.  *Kutter v. Smith, supra; Switzer v. Allen*, 11 Mont.
160, 27 Pac. 408; Jones, Landlord & Tenant, 376, 716; Tay-
lor, Landlord & Tenant, 335a, 551; *Bates v. Johnston*, 12
N. Y. Supp. 403; *Lawrence v. Knight*, 11 Cal. 298.

As against this position appellants cite, among others, the

cases: *Butler v. Manny*, 52 Mo. 497; *Knight v. Orchard*, 92 Mo. 466, and *Crampton v. McLaughlin Realty Co.*, 51 Wash. 525, 99 Pac. 586. The first of these cases probably sustains appellants' contention; the second, notwithstanding the expression, "Plaintiffs promised to compensate the lessee for such permanent improvements as he should erect on the premises, and she could not avoid this obligation by declaring a forfeiture of the lease for nonpayment of the rent," did not involve the exact question with which we are dealing. The question was whether the lessee was bound to pay certain taxes at the time the forfeiture was declared. The court held he was not, and therefore no forfeiture could result because of it. Beyond this the opinion cannot be taken as controlling. *Crampton v. McLaughlin Realty Co.* has nothing in common with this case. The covenants in that contract were clearly independent under any rule. As said in that case, "It is sometimes difficult to determine whether covenants are dependent or independent." We must, therefore, as suggested by Mr. Jones, look to the true intent of the parties to be gathered from a consideration of the whole contract.

The point is also made that the unlawful detainer case is still pending, and the rights of the parties should be measured by that. Appellants or their grantors had their remedy. They might have given a counter bond or protected their interests under the law. They might have tendered the rent due and claimed the term. They did nothing. They admitted their purpose to pay no more rent. They put respondents to their remedy at law, and the further proceedings in that case can be of no consequence to them in this.

"The right of the tenant depends altogether upon his faithful performance of his covenants, and it is difficult to see how his present refusal to pay the rent reserved by the leases puts him in position to enforce covenants of his landlord, which by the provisions of the leases are to be performed *in futuro*, and then only upon his having kept the covenants, which he concedes he has broken." *Paine v. Rector etc. of Trinity Church*, 7 Hun 89.

The argument is also made that the actions were not begun within the proper period of limitation. This point is also well taken. Although the contract provides for a fifteen-year term, this time was stipulated on the theory that each party would abide by and perform the contract for the full term. But the gist of the promise to pay for the improvements is that the lessors would pay when they took possession. This they did in January, 1898. These actions were begun in 1905, more than six years after respondents had taken possession, and were therefore, if we could find that appellants had a right of action at all, barred by the statute of limitations.

The conclusions of law drawn by the trial court were well founded. Judgment affirmed.

RUDKIN, C. J., DUNBAR, PARKER, FULLERTON, and CROW, JJ., concur.

GOSE, J. (dissenting)—I think that the covenant of the lessees to pay rent and the covenant of the lessors to pay for the building are independent of each other. I therefore dissent.

MOUNT, J., concurs with GOSE, J.

MORRIS, J., took no part.