# GRACE CLARK v. JOHN CLARK.[1]

## July 10, 1925.

## No. 24,678.

**Relationship of daughter to promisee, when contract is for her benefit, gives her right to sue promisor on contract.**

1. When a third party, for whose benefit a contract is made, is a daughter of the promisee, such relationship is sufficient to supply the legal right in her to maintain an action upon the contract against the promisor.

**Evidence insufficient to support finding of lessor's consent, waiver or ratification of subletting.**

2. Record fails to disclose evidence to sustain a finding of actual written consent, or waiver, or ratification, of subletting of leased premises contrary to the terms of the lease.

**Lessor's covenant to pay third party value of dwelling erected by lessee an independent covenant.**

3. Covenant on part of lessor to pay to a third party, upon the expiration of the term, the reasonable value of a dwelling erected by the lessee construed as an independent covenant upon which liability of lessor could be predicated even though the lessee on his part had violated the terms of the lease.

**Whether covenant is independent or dependent depends on reasonable interpretation of instrument.**

Whether a covenant is independent or dependent must depend upon the rational interpretation of the instrument involved "keeping within the good sense of the case."

1. See Contracts, 13 C. J. p. 709, § 816.
2. See Landlord and Tenant, 36 C. J. p. 192, § 852.
3. See Landlord and Tenant, 35 C. J. p. 1185, § 485.
4. See Landlord and Tenant, 35 C. J. p. 1184, § 485.

---

1. See notes in 25 L. R. A. 257; 2 L. R. A. (N. S.) 783; 6 R. C. L. 892; 2 R. C. L. Supp. 237.

3. See note in 24 L. R. A. (N. S.) 1082; 16 R. C. L. 794. See also 7 R. C. L. 1090; 2 R. C. L. Supp. 506; 5 R. C. L. Supp. 437.

[1]Reported in 204 N. W. 936.

Action in the district court for Stearns county. The case was tried before Roeser, J., who directed a verdict in favor of defendant. Plaintiff appealed from an order denying her motion for a new trial. Reversed.

*Daniel W. Doty*, for appellant.

*J. D. Sullivan*, for respondent.

WILSON, C. J.

Plaintiff sues her brother for $4,000, the alleged value of a dwelling house. The court directed a verdict for defendant. Plainttiff has appealed from an order denying her motion for a new trial.

In 1891 defendant, as lessor, leased a 100-acre farm in Canada to his father for and during the natural life of defendant's father and mother. The lease contained this provision:

"And it is hereby expressly agreed to and between the said Lessor and Lessee that the said Lessee is not to be paid or recompensed for any improvements that he may do on the said demised premises other than that the said Lessor is to pay to Grace Clark, the said Lessee's daughter after the decease of Lessee and his wife a fair valuation for the dwelling house to be erected on the said demised premises by the said Lessee."

The father promptly went into possession and built a dwelling house on the farm and lived there and worked the farm. In 1906 the parents, being unable to longer work the farm because of injuries received in an accident, advised the defendant that it was necessary for them to leave the farm. Defendant suggested that the farm be sold. The father by letter asked $2,000 for his contribution to the farm. Upon receiving a letter in answer, the father wrote the son: "We called on John Hamilton * * * we both thought it would be best to rent it, so I have rented it." Full information was given of the rental. John Hamilton was defendant's father-in-law. The tenant surrendered possession March 1, 1908, and thereafter defendant had the possession and income. The father died April 10, 1910, and his wife died July 26, 1921. Thereafter this

action was commenced and the answer alleged several violations of the lease by the father including a subletting without the written consent of the lessor, and an abandonment. The directed verdict was upon the theory that the father had not carried out the provisions of the lease.

1. The plaintiff was a stranger to the lease. She could not recover in this action if there were nothing except the promise. A third party, for whose benefit a contract is made, has a right of action on it, if there be a duty or obligation to him on the part of the promisee, or he is connected with the consideration, or has a legal or equitable claim to the benefit of the promise. Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. 618; Gaffney v. Sederberg, 114 Minn. 319, 131 N. W. 333; Gen. Elect. Co. v. Jordan, 137 Minn. 107, 162 N. W. 1061; Clark v. P. M. Hennessey Const. Co. 122 Minn. 476, 142 N. W. 873; Michaud v. Erickson, 108 Minn. 356, 122 N. W. 324. In this case the plaintiff, the third party, was the daughter of the promisee. This relationship is sufficient to supply the legal right in the plaintiff. Jefferson v. Asch, supra; Dutton v. Pool, 1 Vent. 318; Felton v. Dickinson, 10 Mass. 287; 1 Williston, Cont. § 368, note 83.

2. It is the contention of the plaintiff that the record discloses evidence of actual written consent, of waiver, and of ratification of the subletting. The letters of the son to the father were not produced. Defendant testified that he told them (his parents) that if they wouldn't stay something would have to be done. The letters of the father evidence a strong desire to have the co-operation of the son, and we might assume that under the circumstances the son would probably yield to the desires of his parents in respect to leaving the farm. However, we think the record fails to show any evidence that would support a verdict based upon the claim that written consent had been given. The mere fact that the tenant was permitted to remain in possession for one year should not constitute a waiver of the prohibition against subletting. Defendant did not collect or receive rent for such period. Nor is it, under the circumstances, evidence of ratification. In fact the father leased the prem-

ises to one Kress not in the son's name but in his own name. The doctrine of ratification has no application.

3. The liability of a landlord to pay a tenant for an improvement is an invasion upon the common law. Such liability must therefore rest upon contract. The tenant's sole right to recover rests in the language of the lease. The father failed to perform the lease on his part, and he violated the terms of the lease by subletting without the written consent of the lessor. Some authorities hold that default of the tenant in the performance of his covenants destroys his right of action upon the covenant of the landlord to pay as specified in the lease. Kutter v. Smith, 2 Wall. 491, 17 L. ed. 830; West Shore R. Co. v. Wenner, 75 N. J. Law, 494, 68 Atl. 225, 127 Am. St. 806; Toellner v. McGinnis, 55 Wash. 430, 104 Pac. 641, 24 L. R. A. (N. S.) 1082. These cases go upon the theory that the landlord's covenant to pay is to be performed only after full performance by the tenant. These cases rest upon the proposition that upon the language of the contracts involved the liability depended upon the contingency of performance by the tenant, and that when, by reason of the acts of the tenant, performance becomes impossible, the landlord's chance for liability is terminated.

In the Kutter case the lease contained a covenant by the lessee to the effect that if he defaulted the lessor had the right to enter * * * "and the said premises again to repossess and enjoy, as in his first and former estate" and further that "if the term should at any time, at the election of the lessor * * * be ended, he, and all those occupying the premises under him, would immediately and peaceably surrender the possession of the premises to the lessor."

In the Toellner case the lease contained a covenant on the part of the lessee substantially the same as in the Kutter case.

In the West Shore case the lease contained a provision that on breach of any of the conditions or covenants contained therein by the lessee "it should cease, determine and be utterly void."

Underlying the reason for each of these decisions is the obvious intent that the landlord had a right to anticipate the benefit of the rental money in order to pay for the improvement. It is just that

it should be so where the lease provides for a large rental accruing to the landlord. The rule announced in these cases is a just and substantial one controlled by the facts involved.

We are to construe a contract. We must find the intent of the parties. The covenant of the landlord, of this character, must be construed as a condition precedent or as an independent agreement according to the intention of the parties and the good sense of the facts and circumstances of the case. Jones, Landl. & Ten. § 324; Palmer v. Meriden Britannia Co. 188 Ill. 508, 59 N. E. 247. This thought is conveyed in the language of the court in Toellner v. Mc-.Ginnis, supra, when it said:

"Sighting, then, along the full length of the barrel of the contract, it would seem that it was the intention of the original parties to make a covenant to pay for the building dependent upon the covenant to make the rent return for the land. The primary object sought to be obtained by the lessors was, no doubt, rent returned, payable monthly for the full term, and by the lessees the use of the ground, for which, in addition to the rent, they were willing to advance the cost of a building and receive at the end of the term two-thirds of its value. This being the manifest intent of the parties, it would be unjust to hold that the one party was bound to the letter of the bond, and the other could repudiate the contract, which for the time may have become onerous, putting upon the lessor the burden of maintaining a property, possibly unproductive, as well as the payment of added taxes by reason of the structure, and abide the lapse of time when they could claim performance on the part of the lessees. To so hold would put it in the power of the lessee to withdraw when the tide of prosperity ebbed, and reassert a right when the tide flowed in. The one promise would not have been made unless the other had been undertaken. They were mutual and dependent. Respondents did not agree to buy a building in any event, but agreed to lease the land, and, after a certain term with rent reserved and paid, to buy the building. The contract was entire in the beginning; it must be so in the end. The fact that its performance may work a

hardship does not make a covenant independent. That is not the test."

What then was the intent of the parties in the instant case? At the outset the rent is five cents per year. The son was permitting his parents to use his land for and during their natural lives. The lessees covenanted to pay the rent and taxes. They covenanted to properly farm the land and to rid it of foul weeds. They covenanted not to sublet the premises. Their lease does not contain any language calling for a forfeiture for the violation of such covenants. The lease contains a covenant of the lessor to pay, after the death of lessees, to his sister, a daughter of lessees, a fair value for the dwelling house to be erected on the premises by the lessees. The provision was in the nature of a provision to insure to the daughter a portion of her parent's estate. The benefits of this lease were all in favor of the lessees. The lessor was not getting and did not expect a rental to enable him to pay for the building. The only benefit he received was the payment of taxes. The parents sublet the premises. This violated the covenants. The lessor in 1908 took and retained possession. The language of the lease did not require the payment to plaintiff until their death. It permitted the lessor, under the facts as they subsequently developed, to have the house 13 years before he was obliged to pay therefor. Under the language of the lease the breach of covenant was beneficial to the lessor and not to his prejudice.

The language of the instrument, and the circumstances of the parties, show that it was the intention of the parties to make this covenant on the part of the lessor an independent covenant. Such construction is supported by common sense and justice. To view the situation otherwise is to say that the ownership of this farm with the house on it was a liability and not an asset. A breach of the covenants of the lessees gave the lessor a right to act wholly independent of and without any reference to the performance by the lessor of this covenant to pay for the improvement on the death of the lessees. Upon facts less favorable, the conclusion has been reached by some courts that such a covenant is independent and is

enforceable even though the lessee by his default suffers a forfeiture. Butler v. Manny, 52 Mo. 497; Knight v. Orchard, 92 Mo. App. 466; Taylor v. Maule, 2 Walker (Pa.) 539; Lent v. Curtis, 24 Circ. Ct. (Ohio) 592; Palmer v. Meriden Britannia Co. 188 Ill. 508, 59 N. E. 247.

Covenants may be wholly independent, although relating to the same subject and made by the same parties and included in the same instrument. When they are independent each party may have his action against the other for the nonperformance of his agreement, whether he has performed his own or not; and as to whether or not a covenant is independent or dependent must depend upon the rational interpretation of the instrument involved, "keeping within the good sense of the case."

If it may be said that the lessees abandoned the lease, the consequences would be no different than the result of subletting.

Reversed.