## UNITED STATES FIDELITY & GUARANTY CO. v. VERMONT MARBLE CO.

(Circuit Court of Appeals, Seventh Circuit. December 13, 1926.)

### No. 3704.

1. **Indemnity** ⟨key⟩15(2)—**Company furnishing marble for mausoleum under Minnesota law held not entitled to recover on bond of cemetery association, naming as obligee persons subscribing for crypts.**

Under law of Minnesota, company furnishing marble for construction of mausoleum by cemetery association *held* not entitled to sue on bond given by association, naming as obligee those who had theretofore or who thereafter became subscribers for crypts or spaces in the mausoleum.

2. **Principal and surety** ⟨key⟩60—**Liability under bond executed in Minnesota by Minnesota corporation, involving local contract, held controlled by Minnesota Law.**

Where bond was executed and delivered in Minnesota, was between a Minnesota corporation and a foreign corporation authorized to do business there, and involved the construction of a mausoleum in Minnesota, *held*, scope of bond as affecting liability thereunder was controlled by law of Minnesota.

In Error to the District Court of the United States for the Eastern District of Illinois.

Action by the Vermont Marble Company against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

The marble company, a Vermont corporation, defendant in error, recovered judgment against the surety company, plaintiff in error, a Maryland corporation, authorized to do business in the state of Minnesota, on a surety bond given under these circumstances: The Forest Cemetery Association, a Minnesota corporation, owned and operated in Minnesota a cemetery, and, desiring to build thereon a mausoleum, in order to finance the project, organized a concern to sell or lease to the public, spaces therein. Under date of November 4, 1916, the surety company, at St. Paul, Minn., in consideration of $600 to it paid by the association, executed and delivered the bond here in question, signed by it

as surety and by the association as principal, in the sum of $60,000, the obligee named being those who had theretofore and who should thereafter become subscribers for crypts and spaces in the mausoleum, and reciting that the association has undertaken to build the mausoleum "free of mechanics' liens, in accordance with the plans and specifications."

The condition of the bond is that, if the association shall build and complete the mausoleum according to the plans and specifications, and "if the said principal shall pay as they become due all just claims for all the work performed, and for all skill, tools, machinery, and material used or employed in the construction of said building, and shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from its failure to construct and complete said mausoleum as aforesaid, and to promptly discharge such claims, then the above obligation shall be void." Then follows a proviso that, in case of default of the principal, the surety shall have the right to assume and complete or procure the completion of the building, and shall be subrogated to all rights and properties of the principal arising out of the undertaking and otherwise, and all deferred payments due the principal by the terms of the subscriptions.

Under date of January 9, 1917, the marble company contracted with the association to supply the marble for the mausoleum at the price of $39,000. The marble was duly delivered, and the mausoleum fully completed in accordance with the plans and specifications. No liens or other demands were filed or claimed against the cemetery property or the mausoleum.

In a contract dated October 28, 1922, between the association and the marble company, it is recited that there was then due and owing the marble company, on account of the marble so furnished, the sum represented by five notes, dated September 27, 1918, given by the association to the marble company, due respectively one, two, three, four, and five years from their date, each for $5,973.90, with interest at 6 per cent., save that two payments thereon, aggregating $725, had been made; that the association was then unable to pay the notes, and to secure payment "does hereby deliver to the Vermont Marble Company a deed conveying to said Vermont Marble Company" certain enumerated spaces and crypts in the mausoleum, reciting prices therefor aggregating $58,950, with provision for the sale of the spaces and crypts and application of the proceeds on the debt to the marble company, and for reconveyance to the association of unsold spaces after the debt is paid. But it appears that the marble company had realized nothing from this security, and that the association made no further payments on the debt.

Under the laws of Minnesota, property in that state used for cemetery purposes is exempt from seizure on attachment and from sale under execution, and from liens for labor or materials supplied for any building or improvement thereon. It appears no subscriber or obligee under the bond has made any claim thereunder against surety company. The complaint was filed in the state court of Wisconsin, May 7, 1923, and the cause removed to the District Court. The facts were all stipulated, and each party moved for a directed verdict, which the court granted on behalf of the marble company, and verdict given for $32,442.79, and judgment thereon rendered.

Jackson B. Kemper, of Milwaukee, Wis., for plaintiff in error.

Otto Kueffner, of St. Paul, Minn., and A. B. Houghton, of Milwaukee, Wis., for defendant in error.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1, 2] The bond was executed and delivered in Minnesota, was between a Minnesota corporation and a foreign corporation authorized to transact business there, the mausoleum in question was to be constructed there, and the contract was there to be carried out. The bond is clearly a Minnesota contract, and its scope and the liability thereunder must be tested by the laws of Minnesota.

In Jefferson et al. v. Asch et al., 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. Rep. 618, it appears that a landowner leased the land to one Benz, who in turn sublet it to persons who employed a contractor to make improvements thereon; the contractor giving to Benz for the use of the landowner "and all persons who may do work or furnish material," a bond conditioned that the contractor pay all just claims for work done and material furnished, and indemnify Benz and the owner from mechanics' liens. One who sold the contractor lumber for the job sued on the bond for its unpaid price.

The court, while expressing the view that the bond was for the indemnity only of the named obligee, stated that, since the parties to the cause presented it on the theory that

the primary purpose of the bond was to secure payment to those doing work or supplying materials on the job, it would upon this theory consider whether there was liability on the bond to the person who sold the lumber to the contractor. It held that, since Benz and his lessees could not be held liable for the lumber, and since, under the law, his interest was not subject to lien therefor, it was a matter of indifference to him whether the materials were paid for or not. The court then propounded the question:

"Where, in a contract between two persons, one promises the other to do something for the benefit of a stranger to the contract, and the promisee has no relation to the thing to be done, nor to the stranger to be benefited, can such stranger bring an action to enforce the promise?"—and following discussion of the authorities, concluded: "Without undertaking to lay down a general rule defining when a stranger to a promise between others may sue to enforce it, we are prepared to say that, where there is nothing but the promise, no consideration from such stranger, and no duty or obligation to him on the part of the promisee, he cannot sue upon it."

In the instant case we have not even the promise to materialmen, on the theory of which the court considered Jefferson v. Asch. Surely there was here no consideration passing from the marble company to the obligee, and no duty or obligation to the marble company, which, to all intents, was a stranger to the bond transaction. We have here, also, the circumstance there appearing of the obligee of the bond being, after the building was completed, legally indifferent to "whether the work and materials were paid for or not." The mausoleum was finished, and under the law of Minnesota no lien thereon could be asserted, and no execution or attachment levied, and surely individuals of the class constituting the obligee of the bond were not personally liable.

There is apparently no dispute that the Jefferson-Asch Case, unless afterward modified, indicates the law of Minnesota as to the right of defendant in error to sue on the bond; but it is contended that subsequent decisions of the same court have so far departed therefrom as to sustain this action.

Michaud et al. v. Erickson et al., 108 Minn. 356, 122 N. W. 324, is claimed to indicate such a departure; but we do not see wherein this is so. It appeared there that others had an interest with the obligee in the subject-matter of the bond, and that the obligee acted in the matter, not only for himself, but as agent for these others, among them those who asserted liability to them under the bond, and the court there said:

"The contract is with Read [the obligee of the surety bond]; but these third parties were to receive a benefit therefrom, and under the rule in Jefferson v. Asch * * * they are entitled to maintain the action, providing there was an obligation to them on the part of Read."

We may again state that no similar relation appears between obligee of the bond here and the marble company.

The other cases principally relied upon to establish the departure are Clark v. Clark, 164 Minn. 201, 204 N. W. 936, and Harriet State Bank et al. v. Samels et al., 164 Minn. 265, 204 N. W. 938. But these cases do not indicate any such conflict or departure. The circumstances of the first make it quite inapplicable. The second, while more nearly in point, seems rather to confirm than conflict with Jefferson v. Asch. The opinion states:

"In Jefferson v. Asch * * * it was held that a stranger to a contract to whom the promisee is under no duty or obligation, who is not in privity with the parties, and who has paid no consideration, cannot recover upon a promise to do something for his benefit. That doctrine is firmly established in this jurisdiction" (citing cases).

Moore v. Mann et al., 130 Minn. 318, 153 N. W. 609, is in its facts strikingly similar to the instant case. The bond there sued on by a stranger to it, who had done work on the premises, was in all essential particulars like that here. Respecting his right to sue, the court said:

"We construe the bond to be one of indemnity only. Dittenhofer was the sole obligee. It did not intend to secure Moore or others who might do work included in it. It intended to indemnify Dittenhofer. It did not intend to give any one else the right to sue upon it. Under this construction there is nothing left for profitable discussion. The question of a consideration passing to the surety is immaterial. Nothing is to be gained by investigating the cases where one is permitted to sue on a promise made to another for his benefit. It was not intended that any one but Dittenhofer should be indemnified, or that any one other than he might sue."

Whatever may be the law thereon in other jurisdictions, that of Minnesota is too well established by its Supreme Court to warrant our departure from it. So tested, defendant in error, who was a stranger to the bond, who had paid no consideration, and to whom the obligee was under no duty, and was not in privity, acquired no rights under it. None

of the exceptional circumstances here appear whereunder it has been held that a stranger to a contract may recover thereon.

In briefs for defendant in error it is earnestly urged that, since there could be no lien on the cemetery property, the parties to the bond must have intended thereby to secure payment to those supplying material and work therefor, as neither they nor the contractors would, without right of lien, or to execution on judgment, undertake to supply materials or work for the premises; also that the marble company knew of and contracted with reference to and on the faith of the security of the bond. The stipulation does not indicate whether or not it had such knowledge, nor would these considerations make any difference in the legal relations. Besides, it would be strange indeed if, relying on this security, it permitted five years to pass before attempting to assert it against this responsible and accessible surety, in the meantime accepting serial notes with maturities up to five years, and after three years making a new agreement for the acceptance of evidently doubtful security from the cemetery company. While it is probable that it knew of the existence of the bond, its reliance upon it is extremely doubtful. Indeed, the circumstances strongly indicate the contrary.

But, whatever the merit of these contentions, it is apparent to us that the mausoleum, having been completed without any lien or charge upon it, and without loss to the obligee or to any member of the class as defined in the bond, the marble company is not under the laws of Minnesota entitled to sue thereon.

The judgment must be, and it is, reversed, and the cause is remanded, with direction to proceed in conformity herewith.